James Wilbert **STEWART**, Appellant,

v.

**CREDIT BUREAU, INC.**

**No. 83–1847.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 25, 1984.

Decided May 4, 1984.

---

James McConville, Washington, D.C., with whom Mary L. Wilson, Washington, D.C., was on the brief, for appellant.

Shelia J. Carpenter, Washington, D.C., with whom Michael S. Smith, Washington, D.C., was on the brief, for appellee.

Before WALD and MIKVA, Circuit Judges, and VAN DUSEN,* Senior Circuit Judge for the United States Court of Appeals for the Third Circuit.

Opinion PER CURIAM.

PER CURIAM:

Appellant James Stewart appeals from a district court order granting summary judgment for the Credit Bureau Incorporated of Georgia (CBI) and dismissing all of Stewart's claims. Stewart's main contention is that CBI violated the Fair Credit Reporting Act's (FCRA or Act) requirement that a consumer reporting agency "follow reasonable procedures, to assure maximum accuracy," 15 U.S.C. § 1681e(b),[1] when it inaccurately reported to credit grantors that he had filed for bankruptcy under a wage earner plan. Stewart claims as well that the procedures followed by CBI after he disputed other adverse entries in his credit file also violate section 1681e(b).[2]

This court, in a companion case decided today, holds that once a credit report is shown to be "inaccurate" section 1681e(b) commands an inquiry as to whether the procedures followed by the reporting agency in preparing the report were reasonable. *Koropoulos v. CBI*, 734 F.2d 37 (D.C.Cir.1984). This case raises a related question about the showing a plaintiff must make for his claim to survive summary judgment on the issue of the reasonableness of those report procedures. After a thorough review of the record, we believe there is a genuine issue of fact about the reasonableness of CBI's procedures in this case. We therefore vacate the district court's grant of summary judgment on plaintiff's claims that he was denied credit and membership in CBI due to the inaccurate CBI report. We do, however, affirm the district court's grant of summary judgment on Stewart's claims arising from CBI's investigation of disputed items in Stewart's file.

## I. BACKGROUND

Stewart is a schoolteacher who also owns rental property and operates a financial consulting business in the District of Columbia. His consulting business involves helping individuals and small businesses complete applications for credit in a manner that increases the applicants' chances of getting credit. Stewart applied for American Express and Diner's Club cards, which he intended to use for his consulting business. In addition, he applied for CBI membership, which would entitle him to receive CBI's consumer credit reports, so he could evaluate the credit worthiness of potential tenants and aid clients in getting credit. In December, 1978, his credit card applications were denied because of adverse information in a credit report supplied by CBI. In March, 1979, CBI denied Stewart membership; he alleges that this denial was also because of CBI's credit file on him. Brief for Appellant at 12–13.

On March 29, 1979, Stewart visited CBI's local office to examine his credit file. As a result of this visit, CBI noted that four entries in Stewart's file should be reinvestigated: (1) a wage earner's plan, (2) an outstanding tax lien from Arlington Coun-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Section 1681e(b) provides:
   Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. § 1681e(b).

2. The FCRA explicitly provides procedures a credit reporting agency must follow in cases of disputed accuracy. *See* 15 U.S.C. § 1681i. The agency must reinvestigate disputed information, delete all information that cannot be verified, and allow the consumer to provide a statement regarding any information he still disputes after reinvestigation. *Id.*

   Although in the district court Stewart seemed to claim that CBI's reinvestigation violated both sections 1681i and 1681e(b), on appeal he argues only that CBI's reinvestigation procedures violate section 1681e(b)'s requirement that CBI "follow reasonable procedures to assure maximum accuracy," 15 U.S.C. § 1681e(b). *See* Brief for Appellant at 5–9 (argument never mentions section 1681i).

ty, Virginia, (3) late payments on a Hecht Company account, and (4) late payments on a loan from Virginia National Bank (VNB). CBI's investigation revealed that the wage earner plan entry had erroneously been reported to CBI by another credit reporting bureau, and that Stewart's file should have reflected instead a 1977 judgment against Stewart by the Commonwealth of Virginia. The reinvestigation also revealed that the reported tax lien had been paid in 1977, and that despite previous late payments leading to the adverse entry on the Hecht account, Hecht now considered Stewart's account to deserve a favorable rating.[3] CBI made corrections to Stewart's file in accordance with the information learned upon reinvestigation, and notified Stewart of these changes.

Despite these changes, Stewart continued to complain about his file. In particular, he objected to CBI's failure to note that the tax lien was assessed against Stewart's business and was, in any event, disputed by him. Although CBI provided Stewart with a form inviting him to submit a consumer statement if he felt that any item in his file "still needs evaluation or explanation so that [his] side of the circumstances [of the reported credit transactions] can be reported to credit grantors," Deposition of James Stewart, Exhibit No. 15, *Stewart v. CBI*, Civ. No. 79–2640 (filed June 19, 1980), Stewart did not send any statement back to CBI, *id.* at 27. Instead, about six months after receiving this notification, Stewart filed this suit.

Stewart claimed that the inaccurate information CBI reported injured him by causing American Express and Diner's Club to deny his applications for credit cards, and CBI to deny him membership. His complaint alleged that the inaccuracies resulted from CBI's failure to follow reasonable procedures to assure maximum accuracy. Complaint, ¶ 13 at 3. It further alleged that CBI failed to reinvestigate all these disputed entries in Stewart's file. *Id.*, ¶ 12 at 3. CBI moved for summary judgment on the grounds that it reinvestigated and updated all disputed entries, CBI did not deny Stewart membership based on his credit file, and Stewart failed to show that he suffered any actual harm from CBI's inaccurate reporting. Motion for Summary Judgment of Defendant at 1 (filed Feb. 22, 1980).

The district court noted that if Stewart could support his claim of actual damages, his section 1681e(b) claim could not be defeated on the two other grounds of CBI's motion for summary judgment, since neither attacked his allegation that the denial of credit cards was caused by the initial inaccurate entries. *Stewart v. CBI*, Civ. No. 79–2640, slip op. at 2 (filed May 9, 1980) (Order). It ordered the parties "to file supplemental memorandum [sic] addressing the question of what damages are cognizable under section 617 [of the FCRA, 15 U.S.C. § 1681o]." *Id.* It further invited CBI

> to supplement its motion for summary judgment to raise the issue of whether CBI followed reasonable procedures to assure the accuracy of its reports. *See* 15 U.S.C. § 1681e(b). Such a motion or its supporting memorandum should also address the question of which party has the burden of proving that the credit agency has or has not followed reasonable procedures.

*Id.* CBI declined the court's invitation to move for summary judgment on the reasonableness of CBI's procedures;[4] it filed

---

3. There was also an initial indication that the reported late payment on the VNB loan was an error. However, after this suit was filed, CBI learned that, in fact, VNB had issued two loans to Stewart with identical account numbers, but different opening and closing dates. On one loan Stewart had indeed made late payments. CBI's reporting of the VNB loan is not an issue in this appeal.

4. CBI explicitly stated:
   CBI previously has indicated to the Court that it does not base its Motion for Summary Judgment on the issue of reasonable procedures. Although plaintiff at his deposition was not able to point to any procedure of CBI which he is challenging as unreasonable (Stewart Dep. pp. 29–30), CBI does not intend to place the issue of reasonable procedures in issue by a motion for summary judgment.

instead a renewed motion asking for summary judgment on its initial grounds, and responded to the particular inquiries on harm and the burden of proof in the district court's order. Memorandum of Points and Authorities in Support of Renewed Motion for Summary Judgment of Defendant at 2–3 (filed May 30, 1980).

The district court granted CBI's motion for summary judgment and dismissed all of Stewart's claims. Its order cited Stewart's failure to "rebut ... defendant's uncontradicted affidavits and exhibits" showing that CBI did reinvestigate the disputed information, and CBI did not rely on its inaccurate credit report to deny Stewart membership. *Stewart v. CBI*, slip op. at 9, 15 (June 30, 1979) [hereinafter cited as *Memorandum Opinion*]. On Stewart's section 1681e(b) claim based on the initial inaccuracy of his file, however, it held that "plaintiff's allegations of damages do ... appear ... [to] present a triable issue of fact." *Id.* at 15 n.\*. Nevertheless, the court granted summary judgment for defendant because it found Stewart did not intend to shoulder his burden of proof by presenting evidence on the reasonableness of CBI's procedures, an issue CBI had explicitly stated was not raised in its motion. *See supra* note 4. This appeal followed.

## II. The Wage Earner Plan

[1] In *Koropoulos*, at 41–42, decided today, we state that where, as here, a consumer reporting agency reports inaccurate information, a claim for violation of section 1681e(b) will turn on the reasonableness of the agency's procedures for

assuring maximum accuracy of its reports. *See also Hauser v. Equifax, Inc.*, 602 F.2d 811 (8th Cir.1979) (consumer reporting agencies not strictly liable for inaccurate reports under the Act). We hold here that with respect to this second element a plaintiff cannot rest on a showing of mere inaccuracy, shifting to the defendant the burden of proof on the reasonableness of procedures for ensuring accuracy: There is no indication that Congress meant to so shift the nominal plaintiff's burden of proof as to requisite components of a claim based on a statutory violation.[5] Thus, we conclude that a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report. We believe, however, that Stewart did present enough evidence to create a genuine dispute about the reasonableness of CBI's procedures.

"The standard of conduct by which the trier of fact must judge the adequacy of [consumer reporting] agency procedures is what a reasonably prudent person would do under the circumstances." *Bryant v. TRW, Inc.*, 689 F.2d 72, 78 (6th Cir.1982) (quoting *Thompson v. San Antonio Retail Merchants Association*, 682 F.2d 509, 513 (5th Cir.1982) (per curiam)) (insertions by *Bryant* court). Judging the reasonableness of an agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy. *See Koropoulos*, at 42; *Alexander v. Moore & Associates*,

---

Memorandum of Points and Authorities In Support of Renewed Motion for Summary Judgment of Defendant at 15–16 (filed May 30, 1980). CBI further asked the district court to consider its motion as one for *partial* summary judgment if the court felt that damages presented a triable issue of fact. *Id.* at 16.

5. Congress demonstrated that it "knew how" to shift the burden of proof from plaintiff to defendant by explicitly doing so in two other sections of the FCRA. *See* 15 U.S.C. §§ 1681d(c), m(c). Although we are aware of no case directly addressing who has the burden of proving reasonableness of procedures, courts have generally assumed that burden falls on the plaintiff.

*See, e.g., Hauser*, 602 F.2d at 814–15; *Morris v. Credit Bureau, Inc.*, 563 F.Supp. 962, 968 (S.D. Ohio 1983); *Alexander v. Moore & Associates, Inc.*, 553 F.Supp. 948, 954 (D.Haw.1982); *but see Ackerley v. Credit Bureau, Inc.*, 385 F.Supp. 658, 661 (D.Wyo.1974) ("statute provides ... 'reasonable procedures' defense"); *cf. Roseman v. Retail Credit Co.*, 428 F.Supp. 643, 646 (E.D.Pa. 1977) (plaintiff has burden of proving defendant violated the Act). At least one commentator has concluded likewise. *See Panacea or Placebo? Actions for Negligent Noncompliance Under the Federal Fair Credit Reporting Act*, 47 S.Cal.L. Rev. 1070, 1105–09 (1974).

*Inc.,* 553 F.Supp. 948, 952 (D.Haw.1982). Under this standard a plaintiff need not introduce direct evidence of unreasonableness of procedures: In certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures, and we hold that in such instances plaintiff's failure to present direct evidence will not be fatal to his claim.

Our holding is buttressed by several section 1681e(b) cases in which the plaintiffs prevailed despite their failure to present direct evidence on defendants' reporting procedures. In *Bryant v. TRW, Inc.,* 487 F.Supp. 1234 (E.D.Mich.1980), *aff'd,* 689 F.2d 72 (6th Cir.1982), the court upheld a jury verdict against the credit reporting agency, which had reported inaccurate information supplied to it by several sources. The court pointed to apparent inconsistencies between credit reports issued in May and September of 1976, and concluded that such inconsistencies imposed a duty on the reporting agency to verify the information in those reports. *Bryant,* 487 F.Supp. at 1242.[6] In *Morris v. Credit Bureau, Inc.,* 563 F.Supp. 962 (S.D.Ohio 1983), the agency inadvertently maintained two files on the plaintiff. After the plaintiff disputed information which the agency had reported, the agency corrected the information in one but not both of the files. Later, it again reported the inaccurate information. *Morris* found the existence of the two similar files to be a sufficient indicium of unreasonable procedures to satisfy the plaintiffs' "burden of proving that the defendant did not follow reasonable procedures to assure

the maximum accuracy of information reported about him by the defendant." *Morris,* 563 F.Supp. at 968.[7] *See also Millstone v. O'Hanlon Reports, Inc.,* 383 F.Supp. 269, 275 (egregiousness of report's inaccuracy was evidence of "willful noncompliance" with section 1681e(b)), *aff'd,* 528 F.2d 829 (8th Cir.1976).

Stewart's claim is similar to those in *Bryant* and *Morris.* He contends that the wage earner plan entry was facially inconsistent with the rest of his file, which he claims showed "minimal debt obligations and ... [no] substantial delinquency." Reply Brief for Appellant at 3. He notes that, in adding section 1681e(b) to the FCRA, Congress was particularly concerned with the potentially devastating effects that reports of bankruptcies and wage earner plans can have on a consumer's ability to get credit. *See Koropoulos,* at 43–44; H.R.Rep. No. 1587, 91st Cong., 2d Sess. 29 (1970); *Hearings On H.R. 16340 Before the Subcommittee on Consumer Affairs of the House Committee on Banking and Currency,* 91st Cong., 2d Sess. 385–393 (Remarks of Royal E. Jackson, Chief, Division of Bankruptcy, Administrative Office of the U.S. Courts). Certainly, inconsistencies within a single file or report involving an inaccuracy as fundamental as a falsely reported wage earner plan, as well as inconsistencies between two files or reports involving less fundamental inaccuracies, can provide sufficient grounds for inferring that an agency acted negligently in failing to verify information. And, at

---

**6.** The *Bryant* court stated: "To accept defendant's position would mean, among other things, that it had no obligation to compare the information in the May report to the information it received for the September report, even though, on their face the two reports appeared inconsistent." 487 F.Supp. at 1242.

**7.** The *Morris* court stated:

We cannot imagine how many similarities between files must be present before the Credit Bureau suspects it might have more than one file on a person. In this case, the two files maintained were so similar that a reasonable investigation would immediately have indicated that Joe T. Morris and Joseph T. Morris were the same person....

. . . .

We find further that it is not plaintiff's burden to suggest ways in which defendant might improve its operation. Plaintiff has shown that inaccurate information about him was reported by the defendant and *we have found from the record* that defendant was negligent in failing to reconcile the two files .... Plaintiff has, therefore, met his burden of proving that defendant did not follow reasonable procedures to assure the maximum accuracy of information reported about him by the defendant.

563 F.Supp. at 968 (emphasis supplied).

least as the record now stands, CBI has not impugned such an inference either by asserting that, in fact, it does verify information where a file shows internal inconsistencies,[8] or that the rest of Stewart's file was sufficiently consistent with a wage earner plan so as not to give rise reasonably to any such inference.

■ The district court in fact never addressed whether Stewart must present direct evidence of CBI's allegedly unreasonable procedures because it read his Memorandum in Opposition to Defendant's Renewed Motion for Summary Judgment as indicating that he did not intend to show CBI's procedures were unreasonable. *See Memorandum Opinion,* slip op. at 10–11. In light of the procedural posture of the case at that time, the court's reading, we believe, was unwarranted.[9] In granting summary judgment on an issue different from that raised by CBI, the district court denied Stewart any opportunity to explain how he would attempt to prove the unreasonableness of CBI's procedures.[10] In light of Stewart's argument on appeal—that a facial inconsistency between the wage earner entry and the rest of the file creates a duty for CBI to reinvestigate the information, *see* Reply Brief of Appellant at 3—and the present record in this case, which does not belie that argument, we hold that summary judgment on the issue of the reasonableness of CBI's procedures is inappropriate at this time.

## III. CBI MEMBERSHIP

■ Stewart maintains that as a result of CBI's inaccurate report that he had filed a wage earner plan, he was denied membership in CBI itself. The district court denied Stewart recovery on three alternative grounds: First "[s]ince plaintiff has no claim ... for the distribution of inaccurate information to potential creditors, it follows

---

**8.** CBI argues that inferring negligence from a report's inaccuracy is inconsistent with the admonition in *Hauser,* 602 F.2d at 811 that credit reporting agencies not be strictly liable for inaccuracies, and with *Hauser's* implicit assumption that agencies do not have the burden of proving that their procedures are reasonable. *See* Brief for Appellee at 9–10. But *Hauser* itself recognized that certain inaccuracies might give rise to an inference of negligence when it noted: "[t]he information in the ... report is not the type of information which would ordinarily be termed adverse to the consumer, and which would require doublechecking." *Id.* at 815; *see also* Division of Credit Practices, Bureau of Consumer Protection, Federal Trade Commission, Compliance With the Fair Credit Reporting Act 27 (2d ed. revised 1979) ("[w]henever possible, adverse information should be verified by more than one source").

**9.** The district court grounded its belief—that Stewart was basing his claim solely on a showing of inaccuracy and that he did not intend to contest the reasonableness of CBI's procedures—on Stewart's argument that:

> unlike those cases relied on by defendant where ... the information contained in the consumer's report was adverse, but accurate, and the consumer could prevail if, and only if, he showed the reporting agencies employed unreasonable procedures, plaintiff herein will meet his burden by evidence that his consumer file contained erroneous adverse information.

*Memorandum Opinion,* slip op. at 11–12 (quoting Plaintiff's Opposition to Defendant's Renewed Motion for Summary Judgment, at 6) (emphasis in Plaintiff's Opposition). This passage, however, must be read as part of Stewart's legal argument that CBI had the burden of proving the reasonableness of its procedures. So read, the passage does not impart any intention on the part of Stewart to make his case without addressing the reasonableness of CBI's procedures. Nor does Stewart's deposition, also relied upon by the district court, *Memorandum Opinion,* slip op. at 10, support such a reading. In response to questioning about what procedures Stewart considered unreasonable, he responded:

> Well the procedures that I didn't feel that the information was correct that was put in my file, the bankruptcy and the tax lien, and I thought *it should have been checked out better than that before being put in my file.*

Deposition of James Stewart at 29 (emphasis supplied). This statement supports a view that Stewart was complaining about CBI's failure to verify (*i.e.,* "check out") the information in his file rather than that he thought these procedures irrelevant to his claim.

**10.** *Sua sponte* summary judgments are justified only after "the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted." 10A, C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 2720 at 27.

that [he] has no cause of action against defendant for using the same information to deny [CBI membership]." *Memorandum Opinion,* slip op. at 15. Second "there simply is no cause of action under the FCRA to compel defendant to ... provid[e] plaintiff with its credit reporting service." *Id.* Third, "plaintiff has failed to rebut defendant's affidavit that plaintiff's credit record did not play any role in the denial of use of credit reporting service." *Id.* In light of our holding on Stewart's claim-in-chief, we do not believe any of these three reasons justifies a grant of summary judgment for CBI.

The first two reasons can be dealt with in short order. Since we have vacated the district court's dismissal of Stewart's inaccuracy claim, that dismissal can no longer justify summary judgment on the CBI membership issue. And, although the FCRA provides no separate cause of action for refusal to engage in business with Stewart, if that refusal was prompted by an inaccurate entry in Stewart's credit file due to CBI's failure to follow reasonable procedures in preparing credit reports, it is compensable as part of actual damages resulting from CBI's negligent violation of the Act.

Nor does the third rationale, based on Robert Ranfone's affidavit, justify summary judgment. Ranfone, the CBI employee who made the decision to deny Stewart membership, admitted that CBI generally considers an applicant's financial stability, and that when he rejected Stewart, he "had before [him] a CBI report which indicated that [Stewart] had been delinquent in meeting his financial obligations in the past." Affidavit of Robert Ranfone at 2–3. From these admissions, a trier of fact could reasonably conclude that CBI denied Stewart membership at least in part because of the

adverse credit report, and summary judgment was inappropriate. *See Koropoulos,* at 42 ("court is to grant [a] motion [for summary judgment] only if the undisputed facts and the reasonable inferences drawn therefrom, when viewed in the light most favorable to the party opposing summary judgment, support a ruling for the movant").

CBI argues that Ranfone's affidavit, explaining that the denial of membership was independent of Stewart's credit report and instead was made for two legitimate reasons, places these legitimate reasons for denial within the perimeters of "uncontested fact."[11] But this assertion by itself does not resolve the issue and make summary judgment appropriate. "[I]n evaluating a motion for summary judgment [a court should weigh] ... the need for cross-examination ... in relation to [the] evidentiary materials, the general desirability of demeanor testimony, the ... access to proof by the opposing party [to the movant] and the desirability that the case receive the full exploration of a trial." *Lipschutz v. Gordon Jewelry Corp.,* 373 F.Supp. 375, 385 (S.D.Tex.1974). In this case, a factfinder could choose not to believe CBI's self-serving, albeit plausible, assertions. And the district court's suggestion that Stewart must rebut Ranfone's affidavit makes little sense in the present situation. Since the reasons behind CBI's denial of Stewart's application for membership are known for sure only to Ranfone, there is no way for Stewart to directly rebut Ranfone's affidavit. *See Hackley v. Roudebush,* 520 F.2d 108, 157 (D.C.Cir.1975) (to decide if a promotion decision was racially motivated, fact-finder must hear testimony to enable him to evaluate the credibility of the decisionmaker).[12] We believe that the

---

11. Ranfone stated that he "was concerned that [Stewart] did not have a permissible purpose under the Fair Credit Reporting Act for using credit reports," and "that [Stewart's] business would involve showing credit reports to third parties." Affidavit of Robert Ranfone at 2–3.

12. This case involves the unusual circumstance that the defendant credit reporting agency is

also the credit report user. The plaintiff is therefore required to prove that *the defendant* relied on the inaccurate credit report. It is thus similar to cases involving other statutes where a plaintiff must show that a defendant acted *for impermissible reasons.* The Supreme Court, recognizing that it is too easy for defendants in this situation to escape liability by making self-serving statements that they acted for legitimate

record manifests enough possibility that Ranfone did rely on Stewart's credit report to justify allowing Stewart to rebut Ranfone's assertion in the only meaningful manner under these circumstances—by cross-examination at trial.

## IV. REINVESTIGATION OF DISPUTED ENTRIES

In addition to claims based on the facial inconsistency of his file, Stewart argues that CBI's reinvestigation procedures are inadequate to reasonably assure accurate correction of disputed items and thus violate section 1681e(b). *See* Brief for Appellant at 9. In particular, after Stewart told CBI that there was no Arlington County tax lien against him, CBI discovered that there was such a lien, but that it was paid. It added this to Stewart's file and promptly notified Stewart of the change. Stewart objects to the failure of CBI to note also that the lien was against "James Stewart *dba Laundercenter*," and that he contested the lien. Assuming *arguendo* that a section 1681e(b) challenge to reinvestigation procedures is cognizable,[13] we believe that summary judgment on this claim is proper.

Basically, Stewart takes issue with the completeness of his post-reinvestigation credit file. For a plaintiff to prevail on a section 1681e(b) claim based on allegations that a report is incomplete, the lack of completeness must be of a fundamental nature. *See Koropoulos*, at 45. The

post-reinvestigation file on Stewart was not fundamentally incomplete. Even if we accept that the lien was against Stewart's business, Stewart is personally liable for the debts of that business, since the business was a sole proprietorship. The likelihood is thus slim that a credit grantor would alter a credit decision on Stewart due to the addition of "dba Laundercenter" to the tax lien entry. As for Stewart's challenge to the basis for the lien, the record before us indicates no way that CBI could reasonably have found that out by rechecking the public record. CBI therefore could not reasonably be held negligent for entering the lien in Stewart's file without noting that he contested it.

Stewart's complaints about the incompleteness of his file are precisely the types of grievances for which Congress provided a specific dispute mechanism in the FCRA. *See* 15 U.S.C. § 1681i. Stewart invoked this mechanism, and CBI reinvestigated disputed entries in his file as required by section 1681i. *See Memorandum Opinion*, slip op. at 6–7. Stewart conceded that he elected not to return a consumer statement form that CBI provided for him, in connection with its updating, in which he could have provided an elaboration or correction of his file to be included in future credit reports on him. Deposition of James Stewart at 26–27. He cannot now complain that CBI negligently failed to include his full side of the story.

reasons, has often invoked elaborate evidentiary burden-shifting mechanisms to ensure that the plaintiff gets to present his case. *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (once plaintiff shows that a constitutionally impermissible reason was a motivating factor in decision not to rehire teacher, defendant has the burden of showing teacher would not have been rehired for legitimate reasons); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (plaintiff's burden of establishing prima facie case of employment discrimination under disparate treatment doctrine of Title VII is not a heavy one, and once it is met, the defendant must articulate some non-discriminatory reason for its employment decision). Although we do not resort to a formal burden-shifting mechanism to cover this unusual situation under the FCRA, we think that

Stewart should not be required to directly rebut CBI's assertion by affidavit of its reasons for denying Stewart membership, in light of Stewart's evidence that CBI had, in fact, considered the inaccurate credit report, and the impossibility of *directly* rebutting CBI's assertion.

**13.** Given that section 1681i explicitly provides procedures for reinvestigation of disputed information, we are not at all certain that section 1681e(b) was also meant to apply to such procedures. In this case, however, we need not decide if section 1681e(b) provides safeguards for the reinvestigation of disputed information over and above the specific provisions of section 1681i, since even if we assume that it does, we find that CBI's reinvestigation procedures in this case were reasonable and thus do not violate section 1681e(b).

**56**

CONCLUSION

Upon a careful review of the record, we have determined that there is a genuine issue of material fact as to whether CBI followed reasonable procedures to assure the accuracy of Stewart's credit report, where that report contained critical information, such as the filing of a wage earner plan, that Stewart alleges appeared on its face suspicious in view of his credit worthiness reflected in the rest of the report. We therefore vacate the grant of summary judgment on the issue of reasonable procedures. We emphasize in so doing that CBI never moved for summary judgment on this ground, and therefore the record may not be complete with respect to the reasonableness of its procedures. Therefore, our holding does not bar CBI from moving again for summary judgment on the grounds that its procedures were reasonable, or that Stewart was not affected by any unreasonableness, should subsequent development of the record show that these facts are uncontested.

We have also determined that there is a genuine issue of material fact regarding the reason CBI denied Stewart membership. We thus vacate and remand Stewart's claim based on this denial. Finally, we find no merit to Stewart's contention that his file was inaccurate due to CBI's failure to follow reasonable reinvestigation procedures after Stewart disputed information in his file and CBI updated it. We therefore affirm the dismissal of Stewart's claims based on the reinvestigation procedures.

*It is so ordered.*