Thomas K. PINNER

v.

James J. SCHMIDT, the Sherwin-Williams Company, and C.B.M. of Louisiana, Inc. d/b/a Credit Bureau Services—New Orleans.

Civ. A. No. 84–2059.

United States District Court,
E.D. Louisiana.

Sept. 3, 1985.

Edward K. Pinner, Sr., New Orleans, La., for plaintiff.

Ralph Alexis, III, Wm. Porteous, New Orleans, La., for Schmidt and Sherwin-Williams.

Harry A. Rosenberg, Taryn A. Southon, New Orleans, La., for Chilton Corp.

## ORDER AND REASONS IN CONNECTION WITH POST TRIAL MOTIONS AND JURY CHARGES

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court upon alternative motions of defendants for judgment notwithstanding verdict, new trial or remittitur. For the following reasons, the motions are denied. Plaintiff's motion to amend the judgment to award pre-judgment interest is also denied. However, the Court awards the plaintiff attorney's fees incurred in defense of Chilton's motion, and the previously entered judgment shall be amended accordingly. The judgment shall also be amended to correct the inadvertent omission of the jury's verdict on the indemnity claim between defendants Chilton Corporation and Sherwin-Williams. Each motion shall be addressed in turn, and where pertinent, the Court will also provide reasons in support of certain of its charges to the jury.

At all relevant times, plaintiff was a salesman assigned to work at a Gentilly paint store owned by defendant Sherwin-Williams and managed by defendant James E. Schmidt. The evidence showed that considerable tension developed between the plaintiff and Schmidt, attributable to, inter alia, social and business rivalry. This tension culminated in a dispute regarding plaintiff's Sherwin-Williams store charge accounts; simply stated, plaintiff challenged the accuracy of certain charges reflected on his accounts. There was such ill-will existing between Schmidt and plaintiff as to cause plaintiff to suspect that certain charges were fictitious and that Schmidt caused those charges to be made. Ultimately, relations between plaintiff and Schmidt deteriorated to the point of Schmidt's circulating malicious gossip about the plaintiff and engaging in other equally immature behavior.

Whatever precipitated the dispute pertaining to the plaintiff's accounts, the evidence showed at a minimum various accounting errors in respect of the accounts, and Sherwin admitted to such errors at trial. However, Sherwin refused to document the accounts when they were challenged by the plaintiff and reported the accounts as delinquent to both a collection agency and to defendant Chilton d/b/a Credit Bureau Services, notwithstanding plaintiff's objections to the amounts due and owing.

The presence of adverse information in plaintiff's credit history did not come to plaintiff's attention until November 1981, when plaintiff requested and received copy of his credit history from Chilton, showing one of his Sherwin accounts as delinquent and placed for collection. Chilton was thereupon notified in writing by plaintiff's attorney on January 11, 1982 that plaintiff disputed the accuracy of the Sherwin charges. This notice clearly and briefly set forth the dispute between the parties and requested amendment of the credit report. As this was Chilton's first notice of the dispute between plaintiff and the Sherwin defendants, the Court directed a verdict in favor of Chilton and against plaintiff as to Chilton's liability for actions taken by it prior to November 1981.

However, Chilton thereafter consistently refused to clarify its reporting of the status of the dispute between the parties to reflect clearly that plaintiff challenged the Sherwin charges, a matter which could have easily been rectified by Chilton. See plaintiff exhibit 29 (Report of 3/30/82; Sherwin account "Placed for collection"); plaintiff exhibit 31 (Report of 3/31/84; Sherwin account showing "Dispute 5/83—Litigation pending"). In fact, neither the actual knowledge of the dispute afforded by plaintiff's counsel's letter, nor that afforded by Chilton's being joined as a party to this litigation was sufficient to move Chilton to adequately amend the matters set forth in plaintiff's credit report, and the evidence showed Chilton's reporting of plaintiff's credit history to have directly caused a denial of credit to the plaintiff.

As a result of this course of events, plaintiff sought recovery herein against Schmidt and Sherwin under article 2315 of the Louisiana Civil Code for damage to his creditworthiness and reputation and for humiliation and mental distress. Plaintiff also made claims against Sherwin for its noncompliance with the federal Fair Credit Billing Act, 15 U.S.C. § 1666, and against Chilton for both negligent and willful violations of the federal Fair Credit Reporting Act [hereinafter "FCRA"], 15 U.S.C. §§ 1681n & 1681o. For alleged willful violations of the FCRA, plaintiff alleged punitive damages were owing.*

The matter came on for trial May 6–8, 1985, and in response to a special interrogatory form, agreed upon by the parties, the jury returned a verdict finding that (1) Schmidt was at fault in a way that caused damage to the plaintiff; (2) Sherwin was at fault in a way that caused damage to the plaintiff; (3) Credit Bureau Services (Chilton) negligently failed to observe the requirements of the FCRA; (4) Chilton willfully failed to observe the procedures of the FCRA; (5) fair and adequate compensation to be awarded to the plaintiff for his actual damages was $100,000; (6) punitive damages should be assessed in favor of plaintiff against the Credit Bureau in the amount of $100,000; and (7) Sherwin did not owe indemnity to Chilton for the amounts recovered by the plaintiff in this case, under the contract existing between Sherwin-Williams and Chilton.

■■■ In assessing the motions for judgment notwithstanding verdict, the Court is called upon to determine whether there is a complete absence of proof on issues material to plaintiff's causes of action or whether there are controverted issues of fact upon which reasonable minds could differ. The Court must view the evidence in the light most favorable to the party against whom the motions are made. *See Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, 82 S.Ct. 1404,

1409, 8 L.Ed.2d 777 (1962); *Comeaux v. T.L. James & Co.*, 666 F.2d 294, 298 (5th Cir.1982), *supplemented*, 702 F.2d 1023 (5th Cir.1983) (per curiam).

■■■ In assessing the motions for new trial or remittitur, the Court is called upon to determine whether the verdict is excessive or contrary to the weight of evidence or has resulted in a miscarriage of justice. *See Bazile v. Bisso Marine Co.*, 606 F.2d 101, 105 (5th Cir.1979), *reh. denied* 613 F.2d 314 (5th Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 94, 66 L.Ed.2d 33 (1980). These motions are directed to the Court's discretion. *Id.*

After evaluating the evidence under the above standards, the Court is satisfied that defendants' motions must be denied.

The Court first stresses that if the matter had been tried without a jury, the Court would have found a willful and continuing violation of the FCRA based solely upon Chilton's continuing failure to clarify the status of plaintiff's Sherwin-Williams account to specify that the plaintiff was suing Sherwin-Williams. Any normal person could easily have construed Chilton's reporting as an indication that the plaintiff was being sued by Sherwin-Williams, while the actual situation was the reverse. It would have been a simple matter to prevent this ambiguity, particularly in light of Chilton's actual knowledge of the plaintiff's dispute against Sherwin-Williams. *See Bryant v. TRW, Inc.*, 689 F.2d 72, 78–79 (6th Cir.1982) (citing Fifth Circuit standards); *Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 51–52 (D.C.Cir.1984) (cited by Chilton).

■■■ In determining the standards applicable to claims made under the FCRA so as to charge the jury and evaluate the propriety of the jury verdict, the Court considered the specific claims here asserted under the FCRA against Chilton. Plaintiff's claims were made expressly under sections 1681n and 1681o of the FCRA.

---

* The case was originally filed in Civil District Court for the Parish of Orleans on March 15, 1983 and was removed to federal court upon

defendants' joint petition, in light of the federal claims.

No claims were furthered against Chilton under article 2315 of the Louisiana Civil Code for intentional tort. Accordingly, the qualified immunity granted by the Act as to defamation and other types of tort actions was not triggered in this case, and the evidence presented was more than sufficient to support findings of liability under sections 1681n and 1681o.

▇ The Court also observes that Chilton's duty to exercise reasonable care in the preparation of credit reports, arising under section 1681e(b) of the FCRA, extends to updating procedures, because the preparation of a consumer report should be viewed as a continuing process with the obligation to insure accuracy with every additional item of information. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir.1982). There was ample evidence to show that Chilton did not satisfy its obligations in this regard, in light of its actual knowledge of plaintiff's dispute with Sherwin-Williams.

Another of Chilton's contentions, raised in the contexts of the motions for directed verdict and proposed jury charges, although not discussed in Chilton's post trial motions, was that plaintiff should be required to prove that Chilton acted with malice before punitive damages could be assessed. The Court rejected this contention, after analyzing the claims asserted against Chilton in light of the rules set forth in *Fischl v. GMAC*, 708 F.2d 143 (5th Cir.1983), wherein the Court stated that as to violations of the FCRA giving rise to punitive damages under section 1681n of the Act, "Malice or evil motive need not be established for a punitive damages award, but the violation must have been willful." *Id.* at 151 (citing *Thornton v. Equifax, Inc.*, 619 F.2d 700 (8th Cir.), *cert. denied*, 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980)).

The Court also rejected Chilton's contention that reinvestigation under section 1681i is not subject to a reasonableness standard, so long as the technical requirements of that section are met. In support of this argument, Chilton cited *Stewart v. Credit Bureau, Inc.*, supra, 734 F.2d 47 (Court rejecting plaintiff's claim under 1681i on motion for summary judgment where he failed to return form submitted to him by credit bureau). This Court finds *Stewart* distinguishable on several grounds and thus does not consider itself bound by Chilton's reading of the case. *See id.* at 55, n. 13.

Among the distinguishing factors are that Stewart did not send *any* statement objecting to the report in question, which was an amended report reflecting the results of a reinvestigation. *Id.* at 50. Second, the jury here could have easily found Chilton's conduct did not adhere to the technical requirements of section 1681i in light of Chilton's apparent disregard of the letter from plaintiff's attorney, reflected by the credit report of March 1982.

▇ Lastly, this Court finds Chilton's reliance upon *Stewart* misplaced inasmuch as the *Stewart* court did not in fact resolve the issue whether a reinvestigation must be reasonable once a duty to reinvestigate arises, because it found that a reasonable reinvestigation occurred under the facts of that case. *See id.* at 55 n. 13. Accordingly, this Court does not read *Stewart* as holding that reinvestigation need not be reasonable and deems it appropriate to observe that there was ample basis for the jury to have concluded that Chilton did not act reasonably in connection with its reinvestigation of plaintiff's credit history, particularly where, as stated above, the matters at issue could have easily been remedied by amending plaintiff's credit history. *See also Koropoulos v. Credit Bureau, Inc.*, 734 F.2d 37, 40 (D.C.Cir.1984) (Court balancing ambiguity in report against availability of clarifying information).

Chilton had also objected to the Court's charging the jury as to Chilton's duty to reinvestigate, asserting that section 1681i(a) of the FCRA triggers a duty to reinvestigate only when a dispute is directly conveyed to the consumer reporting agency by the consumer himself, in person. Thus, Chilton contends, the letter here submitted to Chilton by plaintiff's counsel falls

short of a "direct" communication by the consumer and absolves Chilton of the duty to reinvestigate. The Court found these contentions wholly unacceptable and takes this opportunity to detail its reasons for rejection of Chilton's position.

The Court did not find any authority expressly discussing an attorney's authority to act for a client in this respect. However, in two cases which this Court finds persuasive, the failure of a consumer to act in person did not prevent consideration of his claims. *See Koropoulos v. Credit Bureau, Inc., supra,* 734 F.2d at 38 (Plaintiff's attorney obtained disclosure of plaintiff's credit file); *Dynes v. TRW Credit Data,* 652 F.2d 35 (9th Cir.1981) (Court interpreting duty to reinvestigate as a matter of first impression; court holding defendant failed to fulfill duty to reinvestigate after consumer telephoned objection to amended report).

■ Based upon these cases, common sense and an interpretation of the FCRA as a whole, this Court determines that the requirement of a direct communication is intended merely to distinguish reporting the dispute to the store or business whose account is in question from reporting it to the credit reporting agency governed by the FCRA provisions. It is inconceivable to the Court that an attorney could not represent a consumer in this regard, and the Court opines that requirements of direct communication elsewhere in the FCRA are intended only to protect the consumer by affording him a qualified confidentiality in the extensive information available from his credit files. *See* 15 U.S.C. §§ 1681b, 1681d.

■ In finding that the evidence more than amply supports the quantum of damages awarded by the jury, the Court is guided by interpretations from the Fifth Circuit of the FCRA, stating, "Even where no pecuniary or out-of-pocket loss has been shown, the FCRA permits recovery for humiliation and mental distress, [citations omitted], as well as for injury to one's reputation and creditworthiness." *Fischl v. GMAC, supra,* 708 F.2d at 151; *Thompson v. San Antonio Retail Merchants Assoc.,* 682 F.2d 509, 513 (5th Cir.1982).

The parties did not request the Court to submit to the jury any interrogatories apportioning liability between the Sherwin defendants, who presented a joint defense, and Chilton. It is difficult for this Court to speculate which party's conduct the jury would have found more objectionable and distressful to the plaintiff. In any event, the amounts awarded as both actual and punitive damages are far from shocking to the Court's conscience, particularly in light of the personal nature and implications of Schmidt's conduct and the principled and unyielding attitude taken by Chilton.

In connection with the quantum of punitive damages, the Court observes that punitive damages are intended to punish. Hopefully, the damages here assessed against Chilton will have some effect on Chilton's future conduct. A smaller amount might not so affect Chilton.

■ The post trial motions of Sherwin and Schmidt are likewise denied. The plaintiff's claims against those defendants were made under article 2315 of the Civil Code. There was ample evidence to support innumerable types of intentional and negligent fault on the part of Sherwin and Schmidt. The Court is here constrained to add that it found totally baseless defendants' objections that the jury should not have been allowed to decide the question of defendants' negligence because the complaint charged defendants with "tortious conduct" and did not specifically urge a "negligence" action. The plaintiff's extensive pleadings and pre-trial memoranda exhaustively detailed the facts and issues to be decided at trial; and in the event of any deficiency, the pleadings would be deemed conformed to the evidence.

■ Nor did Sherwin-Williams' admissions of certain accounting errors in respect of plaintiff's accounts take any issues away from the jury. Defendants had not stipulated to liability and it was certainly appropriate for the jury to resolve the remaining issues of causation and damages

as to any negligent acts. Moreover, allegations of negligence were certainly within the scope of plaintiff's express reliance upon article 2315 for relief and were certainly included within the more serious allegations that defendants inflicted intentional and malicious injury.

▮▮▮ Plaintiff's motion for amendment of judgment to award pre-judgment interest under Louisiana law is denied. Plaintiff presents claims under both Louisiana and federal law, but plaintiff did not request the jury to apportion the judgment to specify what aspect of the award was attributable to the state law claims. Thus the Court is unable to determine the amount of the award upon which pre-judgment interest should run and is therefore prevented from entering such an award.

▮▮▮ However, plaintiff is entitled to an additional award of attorney's fees for the time expended to oppose Chilton's motion, and the Court hereby finds that plaintiff's counsel expended the time indicated in Appendix "B" attached hereto, for which compensation shall be allowed at the hourly rate of $100, for an additional award of $1440.00. See this Court's prior Order and Reasons of June 28, 1985 and Appendix "A" in respect of attorney's fees, which is incorporated herein as if set out in full. The Court also inadvertently omitted from the judgment the jury's verdict on the indemnity claim, and the judgment shall be amended accordingly. The Clerk of Court is hereby directed to amend the judgment to reflect the additional award and the denial of the indemnity claim.

### APPENDIX B

This appendix recites the Court's line by line determinations of recoverable time incurred by plaintiff in connection with his opposition to post trial motions filed by defendants, with each entry corresponding to the entries set forth in the affidavit of Edward K. Pinner, Sr., dated August 6, 1985, and submitted in support of plaintiff's supplemental claim for attorney's fees.

| DATE | WORK PERFORMED | TIME/HOURS ALLOWED |
| --- | --- | --- |
| July 8, 1985 | Reading and studying Motion for Judgment Notwithstanding the Verdict, for a New Trial, and for a Remittitur filed on behalf of Chilton Corporation, and supporting memorandum | 2.0 |
| July 11, 1985 | Study of legal memorandum of Chilton Corporation | 1.5 |
| July 11, 1985 | Phone call from counsel for the Chilton Corporation | 0.2 |
| July 11, 1985 | Phone call from Court personnel regarding Chilton Corporation | 0.1 |
| July 11, 1985 | Phone call from counsel for the Chilton Corporation | 0.1 |
| July 15, 1985 | Study of Motion to Stay and Memorandum filed in connection therewith by Chilton Corporation | 0.4 |
| July 16, 1985 | Reading letter and motion to substitute bond sent by Chilton Corporation | 0.1 |
| July 19, 1985 | Work on rough draft of memorandum in opposition to motions of Chilton Corporation | 2.0 |
| July 26, 1985 | Study of motion for post verdict relief by Chilton Corporation and work on rough draft of memorandum | 1.5 |
| July 27, 1985 | Study of Record in connection with motions by Chilton Corporation for post verdict relief | 0.75 |
| July 29, 1985 | Reading cases cited by Chilton Corporation in their memorandum | 1.0 |

| DATE | WORK PERFORMED | TIME/HOURS ALLOWED |
|---|---|---|
| July 31, 1985 | Reading cases cited by Chilton Corporation in their memorandum | 1.5 |
| August 5, 1985 | Composition of memorandum in opposition to Motions by Chilton Corporation for post verdict relief | 1.75 |
| August 6, 1985 | Completion of composition of memorandum and preparation of this affidavit | 1.5 |
| | Total | 14.40 |