**James Roy JONES and Linda K. Jones, Plaintiffs,**

v.

**CREDIT BUREAU OF GARDEN CITY, INC., et al., Defendants.**

No. 87–1302–C.

United States District Court, D. Kansas.

Dec. 30, 1988.

Henry A. Goertz, Dodge City, Kan., for plaintiffs.

Lelyn J. Braun, Garden City, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on two matters, plaintiffs' motion to strike an affirmative defense and defendants' motion for summary judgment. Plaintiffs bring this action against defendants, Credit Bureau of Greater Garden City, Inc., and Credit Bureau of Western Kansas, Inc., alleging violations of the Fair Credit Reporting Act (Act) 15 U.S.C. § 1681 *et seq.*

The pretrial order in this case was filed July 27, 1988, and its terms will govern all subsequent proceedings. Fed.R.Civ.P. 16(e). Neither the "Issues" section nor the "Plaintiffs' Contentions" section includes any claim against Roland Belcher as an individual. In the paragraph captioned "Nature of the Case" in the pretrial order, the following statement is found: "The defendant Roland Belcher, owner and operator of the defendant credit bureaus, is joined individually because of his negligent failure to adequately train and supervise his employees with respect to their duties to the plaintiffs."

The court does not consider the "Nature of the Case" section to a pretrial order to be a recognized source for discerning plaintiffs' claims. In either, and preferably both, sections captioned "Issues" and "Plaintiffs' Contentions," the claims should be identified, developed, and broken down into their elemental issues. The pretrial order is a document structured and organized along obvious lines, and the court is logically forced to read and interpret it in light of its various section titles. For these reasons, the court finds that plaintiff has not stated a claim in the pretrial order against Ron Belcher as an individual. Even assuming such a claim was properly stated, the court would sustain defendants' motion for summary judgment against it for the lack of any supporting evidence.

Plaintiffs move to strike pursuant to Fed.R.Civ.P. 12(f) from the defendants' answer, and presumably now from the defendants' contentions in the pretrial order, the defense of recovering costs, expenses and attorney's fees under K.S.A. 60–2007 for bringing a frivolous claim. Although greatly disfavored, motions to strike are granted where the challenged defenses are insufficient as a matter of law. *Federal Deposit Ins. Corp. v. Butcher*, 660 F.Supp. 1274, 1277 (E.D.Tenn.1987). Plaintiffs accurately characterize this statutory provision as procedural in nature and rightly concludes that it has no application or force in federal court where the Federal Rules of Civil Procedure control as prescribed by 28 U.S.C. § 2072. Defendants blindly argue

that the express wording of K.S.A. 60–2007 applies to any court in the state. The court is frankly surprised that any counsel would take a position that is utterly lacking in legal merit. The application of K.S.A. 60–2007 in this case would demand nothing short of reversing the landmark decision of *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The court sustains plaintiffs' motion to strike and admonishes defendants' counsel to read carefully Fed.R.Civ.P. 11 as amended in 1983.

▬ Defendants move for summary judgment on all of plaintiffs' claims. In ruling on a motion for summary judgment, the trial court conducts a threshold inquiry of the need for a trial and grants summary judgment where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court is to be concerned with the sufficiency of the evidence, not its weight. *Casper v. C.I.R.*, 805 F.2d 902, 904 (10th Cir.1986.) Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2511–2512. There is no genuine issue for trial unless there is sufficient evidence—significantly probative or more than merely colorable—favoring the non-moving party for a jury to return a verdict for that party. 477 U.S. at 249, 106 S.Ct. at 2510. Where there is but one reasonable conclusion as to the verdict and reasonable minds would not differ as to the import of the evidence, summary judgment is appropriate. 477 U.S. at 250, 106 S.Ct. at 2511.

The movant's burden under Fed.R.Civ.P. 56 is to make an initial showing of the absence of evidence to support the nonmoving party's case. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 345. (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). To show an absence of material fact, the movant must specify those portions of "the pleadings, deposition, answers to interrogatories and admissions on file, together with affidavits if any." Fed.R.Civ.P. 56(c). "[C]onclusory assertions to aver the absence of evidence remain insufficient to meet this burden." *Windon*, 805 F.2d at 345 n. 7. The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts supported by the kinds of evidentiary materials listed in 56(c), which demonstrate a genuine issue remaining for trial. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Windon*, 805 F.2d at 346. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." (citation omitted.) *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1986).

The parties have stipulated in the pretrial order to most of the germane facts in this case. Those questions of material fact remaining will be identified in the following discussion.

Plaintiffs' apparently claim that defendants' alleged actions violated two provisions of the Act. First, defendants wrongly recorded and reported certain credit information of a James *D.* Jones as the credit history of the plaintiff James Roy Jones. These actions allegedly violate 15 U.S.C. § 1681e(b), which provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Plaintiffs' second claim involves later conduct of the defendants. After receiving from defendants a credit report regarding the plaintiffs, the Fidelity State Bank refused to honor the installment loan agreement between Electronic Service Company and plaintiffs for the purchase of a video

cassette recorder. After several telephone conversations with the Electronic Service Company, the defendant credit bureaus, the Fidelity State Bank, and one of the two creditors of the delinquent accounts erroneously included on plaintiffs' credit report, James R. Jones wrote a letter to the defendant credit bureaus disputing two debts. Approximately five days later, plaintiffs received the following letter from defendant credit bureaus:

> As per various telephone conversations between yourself and the Garden City and Dodge City Credit Bureau, it has been investigated and discovered that the two collection accounts reported on your credit file are not yours but another James Jones. The accounts with the Town of Holly and the Prowers Medical Center have been removed from your file and as required by the Fair Credit Reporting Practices, we have been in contact with inquiries on your file over the past six months and corrected the error. We are sorry for any inconvenience this error may have caused you.

The parties have stipulated that despite this letter and repeated requests later by plaintiffs for the defendants to correct this erroneous information given the Fidelity State Bank, the defendants had not yet communicated the corrected information to the bank as of June 2, 1987, nearly four and a half months after sending their letter stating that they had done so. Plaintiffs claim this conduct violates 15 U.S.C. § 1681i(d), which provides in pertinent part:

> Following any deletion of information which is found to be inaccurate or whose accuracy can no longer be verified or any notation as to disputed information, the consumer reporting agency shall, at the request of the consumer, furnish notification that the item has been deleted or the statement, codification or summary pursuant to subsection (b) or (c) of this section to any person specifically designated by the consumer who has within two years prior thereto received a consumer report for employment purposes, or within six months prior thereto received a consumer report for any other purpose, which contained the deleted or disputed information. The consumer reporting agency shall clearly and conspicuously disclose to the consumer his rights to make such a request. Such disclosure shall be made at or prior to the time the information is deleted or the consumer's statement regarding the disputed information is received.

The court understands these to be the plaintiffs' claims in this case.

Defendants' motion does little more than deny the allegations in plaintiffs' complaint and generally challenge the sufficiency of plaintiffs' evidence. Without a single case citation, other than the citation to a Kansas Supreme Court decision on a procedural issue governed by federal law, defendants offer no legal support for their arguments. The court will briefly address the defendants' arguments.

Defendants first argue that the Fidelity State Bank declined the extension of credit to plaintiffs because General Motors had repossessed their vehicle and not because of the erroneous credit information. This factual argument is apparently directed at the damage element of plaintiffs' first claim of whether defendants' procedures reasonably ensured the accuracy of the credit reports. The downfall in defendant's argument is that the reason for Fidelity's refusal to extend credit is a controverted issue of fact. Fidelity's statement of credit denial given to plaintiffs stated the principal reason for the denial was "collections." The credit denial form used by Fidelity included a category of reasons—"Garnishment, attachment, foreclosure, repossession, or suit"—, but this category was not designated as the reason for the denial of credit. In addition, the testimony of the Fidelity officer, Jeff Kincaid, does not sustain the conclusion stated in defendants' memorandum that: "As a matter of fact it was the GMAC repo alone that was the basis for rejecting the application." (Dk. #9 at p. 6). Because the reason for the denial of credit is a controverted issue of material fact, summary judgment is inappropriate. *See Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 54 (D.C.Cir.1984).

Defendants also argue that plaintiff has not come forward with any evidence to show noncompliance with the procedures at 15 U.S.C. § 1681e(b). Defendants refer to the deposition of Roland Belcher where he presumably testifies the office procedures and training of employees were adequate. Plaintiff responds that the inadequate procedures and training can "be inferred generally from the pattern of negligent conduct of the affairs of the Defendant Credit Bureau Services, and such evidence one could not always expect to be adduced directly from the testimony of individual employees of the Defendants." (Dk. # 11, at p. 4). The plaintiff also submits the defendant Belcher's statement that transposition errors are common under circumstances similar to the present case.

Congress passed the Act in an effort to curb abuses by credit agencies and recipients of their reports. *Hovater v. Equifax, Inc.,* 823 F.2d 413, 416–17 (11th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987). The Act protects the consumer's rights in part by requiring that reporting agencies follow reasonable procedures to assure the maximum possible accuracy of the information contained in reports. 15 U.S.C. § 1681e. If a consumer reasonably disputes the completeness or accuracy of the information in his or her file, the consumer may communicate his disagreement to the reporting agency and thereby trigger the agency's duty to reinvestigate and then, if necessary, delete that information. 15 U.S.C. § 1681i. A negligent violation of either section subjects the credit reporting agency to liability for actual damages, costs of the action, and reasonable attorney's fees. 15 U.S.C. § 1681*o*. A willful violation further subjects the agency to punitive damages. 15 U.S.C. § 1681n.

■ The Act does not create strict liability for a credit reporting agency's errors. An inaccuracy in a report does not necessarily mean that a consumer has a cause of action or that the agency is automatically liable. *Bryant v. TRW, Inc.,* 689 F.2d 72, 78 (6th Cir.1982). Instead, liability turns upon whether an agency has maintained reasonable procedures to assure the maximum possible accuracy of the information in the report. 15 U.S.C. § 1681e. The Act recognizes the reality of unavoidable mistakes and imposes no liability for inaccuracies when an agency has followed reasonable procedures.

■ The consumer has the burden of showing that the inaccuracy was the result of the agency's failure to follow reasonable procedures. *Hauser v. Equifax, Inc.,* 602 F.2d 811, 814–15 (5th Cir.1979). Another court has stated that a consumer cannot rest his or her case on the mere proof of an inaccuracy. *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C.Cir.1984). In *Stewart,* the court concluded "that a plaintiff must minimally present evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." 734 F.2d at 51. The circumstances and nature of the report's inaccuracy may sustain an inference that an agency acted negligently. *Stewart,* 734 F.2d at 52–53 n. 8. (such as fundamental inconsistencies within a file and between files). A possible example is where the report or other information suggests the agency "had reason to know something was amiss." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972, 975 (D.C.Fla.1985).

■ In determining whether reasonable procedures were employed, the standard of conduct is what a reasonably prudent person would do under the circumstances. *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987); *Thompson v. San Antonio Retail Merchants Association,* 682 F.2d 509, 513 (5th Cir.1982). The reasonableness of an agency's procedures is assessed by balancing "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Stewart,* 734 F.2d at 51, [citing *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 41 (D.C.Cir.1984) ]; *Alexander v. Moore & Associates, Inc.,* 553 F.Supp. 948, 952 (D.Haw.1982). Plaintiff, however, does not have the burden of suggesting

ways to improve defendants operation. *Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962, 968 (S.D.Ohio 1983).

■ In the case at bar, the plaintiffs have come forth with sufficient evidence to sustain an inference that the inaccuracy was the result of defendants' failure to follow reasonable procedures. First, the defendants apparently recorded the account collection information in plaintiffs' file without verifying the address or social security number of the debtor. Second, the parties have stipulated that one of the collection accounts was sent to defendants' Dodge City office with the debtor identified as "James Jones, Box 7, Spearville, Kansas." Plaintiffs' address was Post Office Box 236 in Spearville, Kansas. Third, defendant Roland Belcher testified in his deposition that information is commonly recorded in wrong accounts in instances like the present case where there is a similarity of names. The burden of verification checks beyond the name of the debtor, such as address, social security number, or other means of identification, does not as a matter of law outweigh the harm resulting from the erroneous recording of damaging information.

The court denies defendants' motion on the § 1681e(b) claim based on negligence. The court finds no evidence to support a willful violation of this provision. The facts of this claim do not resemble in any way the circumstances where punitive damages have been allowed. *See Pinner v. Schmidt,* 805 F.2d at 1263 (and cases cited therein).

Defendants challenge plaintiffs' § 1681i(d) claim on two grounds. First, defendants allege compliance with the requirements of this provision for investigating and discovering erroneous information. Second, defendants assert plaintiffs did not direct them to submit the corrected information to Fidelity. Both points are belied by the parties' stipulations in the pretrial order. The parties have stipulated that as of June 2, 1987, "the defendant had not yet communicated a correction of this erroneous information to Fidelity State Bank." (Dk. # 26 at ¶ O). In the same paragraph

of stipulations, the parties agreed to the fact that "despite repeated requests by the plaintiffs since January 15, that the defendant correct his erroneous information given Fidelity State Bank, Dodge City, Kansas...." In addition, it is stipulated that defendant sent a letter dated January 15, 1987, to plaintiffs stating that the corrected information had been sent to all parties who had inquired of plaintiffs' credit during the past six months. (Dk. # 26 at ¶ N). Defendants' motion for summary judgment on this claim, both as to negligence and willfulness, is denied. A question of fact regarding willfulness is presented by evidence of defendants' representation that the creditors were contacted yet Fidelity Bank had not received the corrected information nearly four and a half months later.

Finally, defendants contend there is no evidence of damages in this case. Plaintiffs claim $3,000 in actual damages in the pretrial order, but no itemization of that amount is made. Plaintiff Linda Jones avers:

4. Although I was not directly paid wages for the truck runs I made with my husband surrounding the time of the incidents complained of herein, my husband and I did suffer damages in the form of lost earnings because my husband was able to bill our employer, Excel Corporation, for fewer miles driven when I was not able to accompany him on certain trips and assist in the driving. Furthermore, certain trucking runs could not be made available to my husband at all when only one driver was available to drive the truck on such particular runs.

(Dk. # 11). This is the only actual damage theory expressed by plaintiffs.

Neither party has briefed the legality of recovering damages for lost wages for labor which would have been performed by a nonemployee. The court seriously questions whether this theory is consistent with public policy, unless it can be shown that such practices were done with the knowledge and authorization of the employer. The issue is reserved for trial.

IT IS THEREFORE ORDERED that plaintiff's motion to strike is granted;

IT IS FURTHER ORDERED that defendants' motion for summary judgment is granted as to plaintiffs' claim for negligent supervision and willful violation of 15 U.S.C. § 1681i(d), and denied in all other respects.

Dated this 30th day of December, 1988, at Wichita, Kansas.