**Joe T. MORRIS, Plaintiff,**

v.

**CREDIT BUREAU OF CINCINNATI, INC., Defendant.**

**No. C-1-81-275.**

United States District Court, S.D. Ohio, W.D.

Jan. 19, 1983.

Steven C. Shane, Cincinnati, Ohio, for plaintiff.

John D. McClure, Cincinnati, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge:

This case came before the Court for a bench trial on December 8, 1982. It is an action for damages predicated upon defendant's alleged violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* Plaintiff contends defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about the plaintiff. Plaintiff contends that defendant was negligent in reporting inaccurate information about him and that defendant is, therefore, liable to plaintiff for damages pursuant to 15 U.S.C. § 1681e. Defendant asserts that it did not report inaccurate information about the plaintiff and that plaintiff has failed to show that an inaccurate report directly resulted from defendant's failure to adopt reasonable procedures. Defendant asserts further that plaintiff cannot prevail because he has failed to show that he was damaged by any negligence of the defendant.

We find from the evidence presented that defendant was negligent in that it failed to follow reasonable procedures to insure maximum possible accuracy of information it reported about the plaintiff. Defendant's negligence resulted in denial of credit to plaintiff on a number of occasions. Moreover, defendant's negligence caused plaintiff considerable stress, anxiety, humiliation and embarrassment and caused a great deal of stress in plaintiff's marriage. We find that plaintiff is entitled to recover Ten Thousand ($10,000.00) Dollars as a fair, reasonable, and adequate compensation for damages resulting from defendant's negligent failure to comply with the Act.

## FINDINGS OF FACT

Plaintiff in this case is an individual who unsuccessfully attempted to obtain credit from various financial institutions and retail merchants from August of 1979 to December of 1980.

Defendant is a credit bureau that reports on all credit accounts in Southwestern Ohio. All major creditors in Southwestern Ohio subscribe to the services of the defendant and report information to the defendant in return. Defendant views itself essentially as a conduit of information. Subscriber creditors report to the defendant information on all persons having credit accounts with those subscribers. In return, subscribers may request information on any person who wishes to obtain credit with them. The credit bureau, for a fee, reports whatever credit information it has on those individuals. The practice of the credit bureau is to report the information as received from its creditor subscribers. The credit bureau does not attempt to verify the information prior to the time it is released to other subscribers. Information will be verified only if a consumer makes a complaint that information reported about him is inaccurate.

On January 23, 1978 Loraine Schreve, present wife of Joe T. Morris, filed a voluntary bankruptcy petition in the United States District Court of Arizona, Tucson District. She was not married to the plaintiff at the time. In the petition Loraine Schreve designated two department store accounts as unsecured creditors: J.C. Penney, and Montgomery Ward. Both of these accounts originated in 1976 and had outstanding balances. Loraine Schreve received a discharge in bankruptcy on June 6, 1978. In February of 1979 Loraine Schreve married Joe T. Morris in Tucson, Arizona. Loraine and Joe T. Morris moved to the Cincinnati, Ohio area in March of 1979. Their address at that time was 2204 Bethel-Hygiene Road, Bethel, Ohio 45106.

In August of 1979 a creditor subscriber of the defendant made an inquiry about plaintiff, Joe T. Morris. This caused defendant to open a file in the name of Joe T. Morris, 2204 Bethel-Hygiene Street, Bethel, Ohio 45106; Social Security Number 412–74–

2561; Credit Bureau Identification Number 22672562. Defendant Credit Bureau had no information on file regarding Joe T. Morris and the inquiring creditor requested defendant to obtain an out-of-town credit report from Tucson, Arizona because Mr. Morris had listed his former address as 131 North Fontana Street, Tucson, Arizona. The out-of-town credit report from Tucson, Arizona reflected two undesignated department store accounts opened in September of 1976 and a bankruptcy. The accounts were rated R–9 which indicates a bad debt. Defendant asserted at trial that the information received from the Tucson Credit Bureau in the name of Joe T. Morris indicated only one unpaid department store account. This is not consistent with the evidence, however, that two unpaid accounts and a bankruptcy were reported in the name of Joe T. Morris to North Central Mortgage Company and Williams Energy Company prior to the time the "Joseph T. Morris" file was opened, a second file on plaintiff.

In the credit reporting industry, the term "undesignated" indicates that the reporting agency is not certain whether the debt belongs to the husband or the wife. The practice in the industry is to place undesignated information in the husband's credit file only, with an identifying code number calling attention to the fact that the specific information is undesignated. The information is placed in the husband's file only until the status of the debt is determined. Defendant stated that the reason for this is that this will more often be the correct designation. This is the way in which the record of Loraine Morris' debt in Tucson, Arizona was placed in the credit file of her husband, Joe T. Morris.

In February of 1980 plaintiff and his wife applied for credit with the Williams Energy Company for home heating oil. Williams Energy made an inquiry with the defendant regarding plaintiff's credit history. Defendant reported to Williams Energy an undesignated bankruptcy and two R–9 undesignated accounts. Plaintiff and his wife were denied credit from Williams Energy Company. Plaintiff had to get an advance on his salary in order to buy home heating fuel and was able to do this only by explaining to his employer that he was unable to secure credit. This caused him a great deal of embarrassment.

In February of 1980 plaintiff and his wife applied for a home loan through North Central Mortgage Company. Defendant reported to North Central in March of 1980 that there was an undesignated bankruptcy in plaintiff's file and two R–9 undesignated accounts. North Central initially denied the home loan application in March of 1980 based on the unfavorable credit report. Plaintiff thereafter explained to persons at the bank that he had never filed bankruptcy. North Central asked Loraine Morris to make a sworn statement that the bankruptcy was hers, not that of her husband's, and after this was done approved the home loan sometime in May of 1980. This loan process took about three months.

Plaintiff applied to Society National Bank for a loan to purchase a truck on April 1, 1980. According to notes on the loan application, this loan was refused because of a bankruptcy in plaintiff's file and because of a lack of an established residence and employment stability. The notice sent to plaintiff, however, indicated that the loan was refused because of a bankruptcy and that the information with regard to the bankruptcy had been received from the defendant Cincinnati Credit Bureau. This notice, sent pursuant to federal law, does not indicate any other reason for denial of the loan even though there are spaces provided to indicate any problems with employment or length of residence.

On April 3, 1980 plaintiff visited the offices of the defendant and informed defendant that he had never filed bankruptcy and that his wife had filed a bankruptcy before they were married. Plaintiff met with Lillian Fryman who agreed to verify plaintiff's allegations and sent an inter-bureau request for a re-investigation on behalf of plaintiff to the Tucson credit bureau. In late April of 1980 the Tucson credit bureau responded to the defendant's request with

the information that the R–9 department store account did not belong to plaintiff but rather was his wife's prior to their marriage and was included in her bankruptcy. On April 29, 1980 defendant deleted the inaccurate information from the file of Joe T. Morris, Credit Bureau Identification Number 22672562. Defendant provided plaintiff with an updated credit report and furnished updated and corrected reports to all creditors who had received a credit report on Mr. Morris during the previous six months.

In late April of 1980 plaintiff made an application for a small loan with City Loan and Savings. This loan was rejected because of information received from the defendant that there were two unpaid accounts and a bankruptcy recorded in plaintiff's credit file. This occurred after plaintiff's interview with the defendant on April 3, 1980.

In August of 1980 plaintiff applied for credit with Matco Tool Company. Plaintiff is an automobile mechanic and needed to purchase tools for his work. Matco generally has a Six Hundred ($600.00) Dollar maximum credit line. Plaintiff's credit line, however, was limited to Three Hundred ($300.00) Dollars. He was not told the reason why his credit line was limited at the time, but he later received a report indicating that the reason was a bankruptcy in his credit file. This loan application was an individual application and did not include the name of plaintiff's wife.

When Matco made an inquiry with the defendant about plaintiff's credit history, the inquiry was made in the name of Joseph T. Morris. Defendant, believing it had no information on Joseph T. Morris, opened a new file under the name Joseph T. Morris, Social Security Number 412–79–2561, Credit Bureau Identification Number 25541905. Because defendant had no information in this file, the inquiring creditor requested defendant to obtain an out-of-town credit report from Tucson, Arizona. The out-of-town report from Arizona again indicated two undesignated department store accounts with high balances of Four Hundred and Thirty-seven ($437.00) Dollars and

Six Hundred and Sixteen ($616.00) Dollars respectively, both rated R–9. Additionally, it was reported that both accounts were in bankruptcy.

Joe T. Morris has never used the name Joseph. The Social Security number placed on the file of Joseph T. Morris was the same as that of Joe T. Morris except that the fifth numeral on the Joseph T. Morris file is a nine, rather than a four. The address indicated on the Joseph T. Morris file was Box 219, Felicity, Ohio 45120; his former address is listed at 2204 Bethel, Bethel, Ohio.

On or about September 11, 1980 plaintiff applied for an automobile loan through Chrysler Credit Corporation. That loan was rejected on the basis of information received from defendant that plaintiff's credit file indicated a bankruptcy.

On October 3, 1980 plaintiff again went to defendant's place of business to determine why his wife's unpaid accounts and bankruptcy continued to be reported as part of his credit history. During this interview it was discovered that defendant had opened two files on Mr. Morris. The file on Joe T. Morris was found not to contain any inaccurate information as it had been corrected during the April, 1980 credit interview. The file of Joseph T. Morris, however, contained the inaccurate information from Tucson, Arizona indicating an undesignated bankruptcy and two unpaid accounts. During this second interview the inaccurate credit information was deleted from the account of Joseph T. Morris and the files of Joseph T. Morris and Joe T. Morris were combined. In addition, defendant supplemented plaintiff's file with information pertaining to accounts with Society National Bank and Mayor's Jewelry. On October 7, 1980 defendant provided Mr. Morris with an updated credit report and furnished corrected reports to all subscribers who had received a credit report on Mr. Morris during the previous six months.

In late November of 1980 plaintiff made an individual loan application to Banc One of Milford, Ohio to purchase a 1974 Chevrolet Nova. Plaintiff's loan application was

denied. In early December of 1980 plaintiff made another individual loan application to Southern Ohio Bank for a One Thousand ($1,000.00) Dollar unsecured installment loan for car repairs and bill consolidation. This loan application also was denied. In early December of 1980 plaintiff and his wife made a joint loan application to Bank Ohio National Bank for an installment loan. This loan also was denied. Notices sent to plaintiff from all of these lending institutions indicated that they had received information from defendant regarding plaintiff's credit history. Both Bank Ohio and Banc One of Milford indicated the reason that the loan application was declined was a bankruptcy. Southern Ohio Bank indicated the loan was denied because of plaintiff's length of employment and because of a bankruptcy.

On December 4, 1980 plaintiff again returned to defendant's place of business and met with Richard Pittenger, manager of defendant Credit Bureau. A check of the reports sent to the above lending institutions indicated that two undesignated R–9 accounts were reported, both of which were in bankruptcy. Defendant was unable to offer an explanation of how or why this inaccurate information re-appeared in plaintiff's file. The inaccurate information subsequently was deleted from plaintiff's file. On December 5, 1980 plaintiff returned to defendant's place of business to pick up letters from defendant to the financial institutions correcting the information that had been sent. Plaintiff delivered these letters himself. On December 8, 1980 defendant wrote the manager of Credit Bureau Services, Tucson, Arizona, requesting that they change their file on Mr. Morris so that any further requests of them for credit information would not result in inaccurate information appearing in Mr. Morris' credit history. The inaccurate information is not currently found in plaintiff's individual credit history file.

Defendant had notice in April of 1980 that the two unpaid accounts and the bankruptcy in Tucson, Arizona belonged to Loraine Morris, not Joe T. Morris. Subsequent to that time, the information reported by defendant showing an undesignated bankruptcy and two unpaid accounts in plaintiff's file was inaccurate. The bankruptcy was no longer undesignated, as defendant knew it was not attributable to Joe T. Morris. Defendant argued that the information that it reported was not inaccurate because its reports indicated the bankruptcy and the unpaid accounts were "undesignated" and that it never indicated that Joe T. Morris had any bad accounts or that he had ever filed a petition for bankruptcy. This ignores the fact, however, acknowledged by defendant that the reason it puts undesignated accounts in the husband's file is that most often the account does belong to the husband. The fact that creditors believed that the bad debts and bankruptcy belonged to plaintiff is made clear by the response of North Central Finance Company. North Central initially was unwilling to loan money to plaintiff and his wife based on the undesignated bankruptcy; however, once Loraine Morris made a sworn statement that the bankruptcy belonged to her and not her husband, North Central then was willing to make a loan despite the fact that it was a joint loan application. Therefore, as long as defendant continued to report an undesignated bankruptcy and two unpaid accounts in plaintiff's file, creditors continued to attribute that bankruptcy and unpaid accounts to the plaintiff. This information was inaccurate.

It is clear from the evidence that Joe T. Morris was denied credit as a direct result of this inaccurate information. Many of his loan applications were denied because of the bankruptcy in his file. Even though defendant brought into court managers of some of the financial institutions to which plaintiff had applied for credit and they testified that the decision to deny credit was not based on the bankruptcy alone, reports sent to the plaintiff by these institutions, pursuant to the FCRA, indicated that the bankruptcy was in fact the basis of the institutions' decisions to deny credit to the plaintiff. The evidence clearly indicated that plaintiff's credit line at Matco Tool was limited based on the inaccurate information supplied by the defendant.

The damages suffered by plaintiff are substantial. Each time plaintiff made a trip to defendant's place of business to attempt to straighten out his credit file, he had to take an unpaid day off of work. He also had to travel approximately sixty miles round-trip on each occasion.

The first two times plaintiff went to defendant Credit Bureau, he was treated without respect by defendant's employees and made to feel as if he had done something wrong. These incidents made plaintiff feel humiliated and embarrassed.

Moreover, plaintiff lives in a small town and many of his friends and neighbors became aware, over the one and a half years it took to straighten out this problem, that plaintiff was unable to obtain credit. Plaintiff was new in the community and anxious to get a good start. He believed that his inability to obtain credit reflected poorly on his character in the eyes of his neighbors. He was embarrassed and humiliated that his neighbors knew that he was not able to borrow money.

Plaintiff's inability to straighten out his credit problems made him anxious and concerned that he would never be able to obtain credit and acquire the things he needed for his business and his home. This strain had a substantial impact on plaintiff's daily life for a year and a half. He became nervous, irritable, and unable to sleep. This caused a great strain on his marriage as well. Loraine testified that Joe seemed to blame her for his troubles and became uncommunicative and difficult to live with. They were newly-married but unable to enjoy each other's company because of the tension and stress caused by Joe's inability to straighten out his problems with the Credit Bureau. They separated for a short time but then got back together.

CONCLUSIONS OF LAW

Plaintiff is a person as defined by 15 U.S.C. § 1681a(b), who has in the two years preceding the filing of this action applied for credit from various financial institutions and retail merchants. Defendant is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f). This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p.

We find from the evidence that defendant was negligent in that it failed to follow reasonable procedures to assure maximum possible accuracy of information reported about the plaintiff. As a result, defendant is liable to the plaintiff for injuries resulting from such negligence. *Bryant v. TRW, Inc.,* 689 F.2d 72 (6th Cir. 1982); 15 U.S.C. § 1681e(b).

Defendant raised a number of defenses. It argued that the Credit Bureau did everything that it could to insure that the information reported about the plaintiff was accurate and that plaintiff failed to show that an inaccurate report directly resulted from the Credit Bureau's failure to adopt reasonable procedures. Second, and related to the first, defendant argued that the Credit Bureau did not report any inaccurate information about the plaintiff as the accounts and bankruptcy were referred to in plaintiff's file as being "undesignated." Defendant asserts that if a consumer report is accurate, there can be no liability. Third, defendant argued that plaintiff had failed to show that he had ever been denied credit as a result of an inaccurate report furnished by the Credit Bureau and that plaintiff had not therefore shown that he was damaged as a result of any negligence of the defendant.

In order to recover in this action plaintiff must prove:

1. Defendant was negligent in that it failed to follow reasonable procedures to assure maximum possible accuracy of information about the plaintiff;

2. Defendant reported inaccurate information about the plaintiff;

3. Plaintiff was injured; and

4. Defendant's negligence was the proximate cause of such injury.

*See, Bryant v. TRW, Inc.,* 487 F.Supp. 1234, 1238 (E.D.Mich.1980), *aff'd Bryant v. TRW, Inc.,* 689 F.2d 72 (6th Cir.1982).

With regard to the reasonableness of its procedures, defendant argued that it initial-

ly had no way of knowing there was any problem with the information reported about Joe T. Morris. Once it was notified in April of 1980 that the bankruptcy and unpaid accounts did not belong in the file of Joe T. Morris, that information was deleted and no longer reported to any creditor requesting information about Joe T. Morris. Defendant argued that it had no way of knowing that Joe T. Morris and Joseph T. Morris were the same person and was not therefore responsible for the fact that a new file was opened in the name of Joseph T. Morris and the same inaccurate information regarding a bankruptcy and two unpaid accounts were placed in that file. We disagree.

In *Bryant v. TRW, Inc.,* the Sixth Circuit Court of Appeals stated:

We agree with the Fifth Circuit and the District Court that 'the standard of conduct by which the trier of fact must judge the adequacy of [consumer reporting] agency procedures is what a reasonably prudent person would do under the circumstances.'

At 78, citing *Thompson v. Retail Merchants Association,* 682 F.2d 509 at 513 (5th Cir. 1982) (per curiam) (citing *Bryant v. TRW, Inc.,* 487 F.Supp. 1234, 1242 (E.D.Mich. 1980)).

We find that a reasonably prudent credit reporting agency would have procedures to detect the similarities in the two files that would have prevented further reporting of inaccurate information about Joe T. Morris. Defendant does have a procedure whereby it scans files twice a year to determine whether it has more than one file on a person but this procedure clearly is not adequate to prevent the problems that arose in this case. We cannot imagine how many similarities between files must be present before the Credit Bureau suspects it might have more than one file on a person. In this case, the two files maintained were so similar that a reasonable investigation would immediately have indicated that Joe T. Morris and Joseph T. Morris were the same person: the former address listed on the Joseph T. Morris file was the same as

the address listed on the Joe T. Morris file; the spouse's name was the same on both files; the occupation listed on both files was the same; the employer on the Joe T. Morris file was listed as Frey Witmer and Frey Witmer was listed as the former employer on the Joseph T. Morris file; and finally, the Social Security numbers on the two files were the same except for one number. Further, we note that many persons involved in this case used the names Joe and Joseph interchangeably. On at least one occasion someone wrote down the name Joseph when they heard the name Joe and the Tuscon Credit Bureau reported the same information whether the request was made for information on Joe T. Morris or Joseph T. Morris. We cannot agree with defendant that a procedure that failed to reconcile these two files is adequate to assure the maximum possible accuracy of information reported by the Credit Bureau.

Moreover, defendant apparently has no procedure to "red-flag" a file once a problem has been discovered. The inaccurate information is deleted, creditors are informed, and the matter forgotten about. In this case, however, the same inaccurate information deleted from the Joe T. Morris file in April of 1980 reappeared in the file in December of 1980 and was reported to a number of creditors requesting information about the plaintiff. Defendant says this is "inexplicable"; we find it is inexcusable and clearly demonstrates defendant's failure to follow reasonable procedures to assure the accuracy of information it reports.

We find further that it is not plaintiff's burden to suggest ways in which defendant might improve its operation. Plaintiff has shown that inaccurate information about him was reported by the defendant and we have found from the record that defendant was negligent in failing to reconcile the two files and by not following procedures that would have prevented the re-reporting of this inaccurate information in December. Plaintiff has, therefore, met his burden of proving that defendant did not follow reasonable procedures to assure the maximum accuracy of information reported about him by the defendant.

Defendant cites a case from the Eleventh Circuit for the proposition that in order for liability to attach there must exist an unreasonable risk of causing error. *Equifax, Inc. v. FTC,* 678 F.2d 1047 (11th Cir.1982). That case, however, involved an enforcement action by the Federal Trade Commission (FTC) challenging ongoing procedures followed by the defendant. There was no individual plaintiff, as we have in this case, complaining that he had been directly injured by defendant's practices. Rather, the question was whether or not the policies and practices of the defendant were such that they created an unreasonable risk of causing error at some time in the future. We find this case not to be applicable to the question before the Court as we are concerned only with procedures followed with regard to this particular plaintiff.

Neither are we persuaded by the cases cited by defendant that no liability attaches as long as the information reported is accurate. As noted above, we have found that the information reported about the plaintiff subsequent to April of 1980 was inaccurate as defendant had knowledge that the accounts were no longer undesignated.

We do not find that there was any malice or ill-will on the part of the defendant and we acknowledge it did try to correct the problem. The procedures followed, however, were not sufficient under the circumstances of this case.

We also find that plaintiff suffered significant harm as a result of defendant's negligence. We have concluded from the evidence that plaintiff was denied credit based on the inaccurate information reported by defendant, but even if this were not the case, we still would find that plaintiff was injured by the negligence of the defendant. In *Bryant,* plaintiff did not prove he was completely denied credit, only that the acceptance of his loan was delayed because of inaccurate information reported by the defendant in that case. Nevertheless, the Sixth Circuit approved an award of damages for Eight Thousand ($8,000.00) Dollars based on injury to Bryant's name and the anguish and humiliation he suffered. At 79.

We are not going to recount again here all of the personal problems that plaintiff suffered as a result of the inaccurate information negligently reported about him by the defendant but we find that plaintiff suffered significant injury to his reputation, his family, his work and his sense of well-being as a proximate result of defendant's negligent failure to comply with the FCRA. We find that damages in the amount of Ten Thousand ($10,000.00) Dollars will reasonably, fairly, and adequately compensate plaintiff for his injuries.

SO ORDERED.