**Keith MIROCHA and Phyllis Mirocha, Plaintiffs,**

v.

**TRW INC., Trans Union Corporation, ITT Consumer Financial Corporation, and Aetna Finance Company d/b/a ITT Finance, Defendants.**

No. NA 91–68–C.

United States District Court,
S.D. Indiana,
New Albany Division.

Oct. 2, 1992.

Roya A. Ghazi, Daniels & Associates, Louisville, Ky., for plaintiffs.

James E. Bourne, Wyatt Tarrant Combs & Orbison, New Albany, Ind., William W. Lawrence, Lawrence & Lawrence, Keith McKinney, Sr., Rays & Weeks, Louisville, Ky., Christopher E. Baker, Rubin & Levin, P.C., Indianapolis, Ind., Carol A. Tiese, Jones, Day, Reavis & Pogue, Chicago, Ill., for defendants.

BARKER, District Judge.

This motion comes before the Court on the eve trial. Defendants move for summary judgment on all counts of Plaintiffs' Complaint, which alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in addition to several pendent state law claims which sound in tort. For the reasons set forth below, the Court grants summary judgment in ITT's favor on Counts I–VI of the Complaint, and in favor of all Defendants on Counts XI and XII, and on Count VII to the extent that it alleges interference with Plaintiffs' former employment. ITT's motions to strike and to "deem matters admitted" are denied.

## BACKGROUND

In September, 1989, Keith and Phyllis Mirocha, husband and wife (collectively "Plaintiffs"), purchased a home in Jeffersonville, Indiana, which they financed with a one-year mortgage. In April, 1990, Plaintiffs decided to sell their home, pay off the existing mortgage, and purchase a new home. Financing for the second home was to be provided through a loan from Inland Mortgage Company ("Inland"). In May, 1990, Plaintiffs signed a purchase agreement for their new home through Remax Realtors; a condition of this agreement was that Plaintiffs would either sell their former house or refinance it on or before September 21, 1990.

In order to process Plaintiffs' mortgage application, Inland sought credit information concerning the Plaintiffs from Defendant TRW, Inc. ("TRW"). In addition to its own credit reports, TRW accessed Plaintiffs' credit history through Defendant Trans Union Credit Services ("Trans Un-

ion"). On May 21, 1990, TRW notified Inland that Plaintiffs' credit record as reported by Trans Union showed a delinquent account for ITT Financial Services ("ITT"), although that account was listed under the name Phyllis R. Farmer ("Farmer") with the same social security number as Plaintiff Phyllis K. Mirocha ("Mrs. Mirocha"), formerly Phyllis K. Farmer by a previous marriage. *See* Complaint, at ¶¶ 23, 24. TRW proceeded to create a joint mortgage report for Plaintiffs which excluded the ITT listing but which did include other allegedly erroneous credit information belonging to Farmer. On May 22, 1990, Inland contacted ITT and advised them of inconsistencies in the credit reports for Farmer and Mrs. Mirocha. The same day, ITT allegedly contacted her employer, Bales Motor Company ("Bales") in Jeffersonville, Indiana, to verify employment and other information.

On May 23, 1990, a collection officer from ITT visited Mrs. Mirocha at her home and advised her that the accounts listed for Farmer included her social security number, date of birth, and address. Mrs. Mirocha informed the ITT representative that her maiden name had been Farmer but that she did not have any accounts with ITT. Plaintiffs' explanation for the similarity of the accounts is that TRW and Trans Union "change[d] the Phyllis R. Farmer information to include information about Phyllis K. Mirocha, thereby creating the inaccurate and improper impression that the credit history of Phyllis R. Farmer was attributed to the Plaintiff, Phyllis K. Mirocha." Complaint, at ¶ 30.

Subsequent to her meeting with the ITT representative, Mrs. Mirocha was told by a representative of TRW that the accounts in dispute would be deleted from the mortgage application credit report because they should not have been part of her file. On May 29, 1990, Plaintiffs visited Trans Union's offices and were shown the same incorrect credit information in their file. Trans Union advised Plaintiffs to follow Federal Trade Commission (FTC) guidelines for correcting the disputed accounts. Trans Union allegedly informed Plaintiffs that the problem would be corrected within sixty (60) days. *See* Complaint, at ¶ 32. Plaintiffs then filed a request with Trans Union to expunge Phyllis R. Farmer's file from Mrs. Mirocha's file. On July 23, 1990, Plaintiffs received a letter from Trans Union stating that the erroneous file had been deleted but that creditors had not been notified of this fact. *See* Complaint, at ¶ 35. On November 6, 1990, Plaintiffs allege that they obtained an updated version of their credit report and learned to their dismay that the Mrs. Mirocha's credit information had been deleted from their file but that the information relating to Phyllis R. Farmer still remained in the report. *See* Complaint, at ¶ 36.

Plaintiffs' contend that due to the faulty credit report they were unable to obtain mortgages for their new and former homes, and have had their car repossessed. *See* Complaint, at ¶¶ 37, 39. They also maintain that they lost their jobs once their respective employers learned that their credit rating was poor and that they had unpaid debts. *See* Complaint, at ¶ 38.

In their complaint, Plaintiffs allege that the Defendants violated provisions of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, *see* Complaint counts 1–5, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, *see* Complaint count 6, in addition to committing a variety of allegedly tortious acts under the laws of Indiana, *see* Complaint counts 7, 7[sic], 10, 11, 12 (no count 9 was included). In its barest terms, Plaintiffs' argument is that the Defendants either negligently or willfully allowed Farmer's credit history to be reported under Mrs. Mirocha's social security number, conveyed that erroneous information in a joint mortgage report concerning Plaintiffs, and finally, failed to correct Plaintiffs' credit records once they had been notified of the mistake. As compensation for their alleged injuries, Plaintiffs pray for both actual and punitive damages against the defendants.

## DISCUSSION

 Defendants move the court to grant summary judgment on all counts of

Plaintiffs' Complaint. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Denials contained in the pleadings or bald allegations that an issue of fact exists is insufficient to raise a factual issue. *See Shacket v. Philko Aviation, Inc.*, 681 F.2d 506, 513 n. 8 (7th Cir. 1982), *rev'd on other grounds*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment denied. *See Wolf*, 870 F.2d at 1330.

### 1. *The Fair Credit Reporting Act*

Counts 1–5 of Plaintiffs' Complaint allege violations of §§ 1681e(a) & (b),[1] and 1681i(a) & (c)[2] of the Fair Credit Reporting

---

1. These provisions provide:

**§ 1681e. Compliance Procedures**

(a) Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

(b) Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C.A. § 1681e (1982).

2. These provisions provide:

**§ 1681i Procedure in case of disputed accuracy**

**Dispute; reinvestigation**

(a) If the completeness or accuracy of any item of information contained in his file is disputed by a consumer, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall within a reasonable period of time reinvestigate and record the current status of that information unless it has reasonable grounds to believe that the dispute by the consumer is frivolous or irrelevant. If after such reinvestigation such information is found to be inaccurate or can no longer be verified, the consumer reporting agency shall promptly delete such information. The presence of contradictory information in the consumer's file does not in and of itself constitute reasonable grounds for believing the dispute is frivolous or irrelevant.

**Notification of consumer dispute in subsequent consumer reports**

(c) Whenever a statement of a dispute is filed, unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof.

15 U.S.C.A. §§ 1681i(a) & (c) (1982).

In addition, § 1681i(b) reads as follows:

**Statement of dispute**

(b) If the reinvestigation does not resolve the dispute, the consumer may file a brief statement setting forth the nature of the dispute. The consumer reporting agency may limit such statements to not more than one hun-

Act ("FCRA"). By their own terms, these provisions only apply to "consumer reporting agencies."[3] Both TRW and Trans Union concede that they are consumer reporting agencies within the meaning of the FCRA, *see TRW Inc.'s Statement of Material Facts as to which No Genuine Dispute Exists*, at ¶¶ 2, 3, while ITT denies the same. *See ITT's Proposed Findings of Fact and Conclusions of Law*, at ¶¶ 2–3; ITT Exhibit B. Because ITT contends that it is not a consumer reporting agency, and therefore is not subject to the provisions of the FCRA cited by Plaintiffs, the Court will address the claims against ITT separately for purposes of the first five counts of the Complaint.

### a. FCRA Claims Against TRW and Trans Union

The focus of the first five counts of Plaintiffs' Complaint are challenges to the reasonableness of the Defendants' compliance procedures under the FCRA. Section 1681e(b) states that consumer reporting agencies must "follow reasonable procedures to assure maximum possible accuracy" of consumer reports. 15 U.S.C. § 1681e(b). Plaintiffs have described the frustrations they encountered in attempting to rectify the errors in their joint credit report, and the bases for their belief that the procedures that the defendants, including ITT, employed were unreasonable. *See Complaint*, at ¶¶ 27–36; *see also Plaintiff's Memorandum of Law in Opposition to Defendant's [sic] Motion for Summary Judgment.*

In response, TRW and Trans Union make no attempt to demonstrate that Plaintiffs have no evidence showing the unreasonableness of their compliance procedures, but instead argue that Plaintiffs cannot prove that the joint mortgage report was the cause of Inland's failure to approve Plaintiffs' mortgage application, and that this showing is a requirement for an award of damages under §§ 1681n and 1681o of the FCRA.[4] According to TRW: "[N]otwithstanding whether there were errors in the Joint Mortgage Report, in order to recover, Plaintiffs have the burden of proving that the reason Inland failed to submit their mortgage application for approval or denial was because of those alleged errors." *TRW's Memorandum in Support of Summary Judgment*, at 4. Defendants place great weight on the affidavit of Jenny Logsdon, a loan processor for Inland Mortgage who worked on the Plaintiffs mortgage application. In their view, paragraph ten (10) of her sworn statement settles the matter: it states: "The fact that

---

dred words if it provides the consumer with assistance in writing a clear summary of the dispute.
15 U.S.C.A. 1681i(b) (1982).

3. Under the FCRA, a "consumer reporting agency" is:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.
15 U.S.C.A. § 1681a(f).

4. These provisions provide:

**§ 1681n. Civil liability for willful noncompliance**
Any consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
(1) any actual damages sustained by the consumer as a result of the failure;
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
15 U.S.C.A. § 1681n (1982).

**§ 1681o. Civil liability for negligent noncompliance**
Any consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
(1) any actual damages sustained by the consumer as a result of the failure;
(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
15 U.S.C.A. § 1681o (1982).

Phyllis Mirocha was no longer employed at Bales Motors and did not have other employment would, standing alone, justify not submitting the loan application to underwriting, since the application for mortgage was based upon the incomes of both Phyllis and Keith Mirocha." TRW Exhibit M. Inland indicated in its denial letter to the Plaintiffs that the reason their mortgage application was not approved was because the "Documents Have Expired." TRW Exhibit S.

The Plaintiffs argue that the reason for their loan application expiring was the false information in the joint credit report and the unreasonable delay in correcting the errors it contained. Plaintiffs' point to the testimony of Vicki Robinson, an employee of Inland: "[The Mirochas'] package was not in a position that I could submit it to an underwriter so a decision could be made.... The reason that the file could not be submitted to the underwriters was due to the credit report. There were so many items on there that the Mirochas disputed were theirs or not theirs. It was up to them at that point to get it straight so that I could prepare my package to go to the underwriter for review." *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment,* at 7, *citing,* Deposition of Vicki Robinson, at 38–39.

The Court concludes that there remain genuine issues of material fact in dispute as concerns Counts I–IV of Plaintiffs' Complaint. For claims brought under the FCRA, "a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report." *Stewart v. Credit Bureau, Inc.,* 734 F.2d 47, 51 (D.C.Cir.1984). For example, in *Morris v. Credit Bureau, Inc.,* 563 F.Supp. 962 (S.D.Ohio 1983), a credit agency inadvertently maintained two credit files on the plaintiff. Although the plaintiff disputed information that the agency had reported, it failed to correct the error in one of the files and continued to distribute the inaccurate information. The *Morris* court found the existence of the two files and the er-

rant reporting were sufficient indicia of unreasonable procedures to conclude that the plaintiff had "met his burden of proving that defendant did not follow reasonable procedures to assure the maximum accuracy of information reported about him by the defendant." *Id.* at 968.

Here, Plaintiffs need only show that there is a genuine issue of material fact concerning the reasonableness of the Defendants' compliance procedures under the FCRA. *See Wolf,* 870 F.2d at 1329; *Posey,* 702 F.2d at 105. Plaintiffs have outlined in great detail the many frustrations they encountered while attempting to correct inaccurate information in their credit records. The Court will not recount them here, but simply notes that inaccurate information was included in the joint credit record and was reported to Inland *after* Plaintiffs had notified the defendants that there was a problem.

TRW and Trans Union have not shown that the Plaintiffs lack sufficient evidence to warrant submitting their case to a trier of fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553. The Defendants' attack on the causal relationship between the Plaintiffs' joint credit report and Inland's denial of the mortgage is insufficient for purposes of summary judgment because the possibility that Inland in fact rejected the Plaintiffs' mortgage due to the defendants' errors has not been foreclosed. A careful reading of the Jenny Logsdon's affidavit, on which Defendants place so much emphasis, indicates that while Phyllis Mirocha's lack of employment "would, standing alone, justify not submitting the loan application to underwriting....", *see* TRW Exhibit M, it was not necessarily *the reason* that Plaintiffs' application was not processed. Merely having a justification for not taking a certain action does not eliminate all discretion on the matter; as Vicki Robinson's testimony indicates, the decision not to process the application may have been made on other grounds, including the state of the Plaintiffs credit history. But for the inaccurate credit reports, it may even have been possible to process the application based only on Mr. Miranda's employment.

The record is not clear on what exactly occurred at Inland, and the testimony of Ms. Robinson only further muddies the waters. Under these circumstances, summary judgment is not appropriate.

■ The Defendants' motion for summary judgment on Count V of the Complaint must be granted, however. That count states: "The Defendants willfully and/or negligently failed to provide subsequent users of the report with Plaintiffs' statement of dispute or a summary thereof, in violation of § 1681i(c) of the Act, all to the damage of Plaintiffs." Complaint, at ¶ 57. Section 1681i(c) provides:

**Notification of consumer dispute in subsequent consumer reports**

(c) *Whenever a statement of a dispute is filed,* unless there is reasonable grounds to believe that it is frivolous or irrelevant, the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof. (emphasis added).

15 U.S.C.A. §§ 1681i(a) & (c) (1982).

The consumer reporting agency's duty to include the consumer's statement of dispute in the report only arises when a statement of dispute is filed. Plaintiffs' have conceded that they never filed such a statement with Trans Union or TRW, or requested that a statement be included in their credit report. *See* TRW Deposition Phyllis (2) at 161–64. Given this admission,

Count V must be dismissed with prejudice as to all Defendants.

**b. FCRA Claims Against ITT**

■ Counts I–V of Plaintiffs' Complaint allege violations under §§ 1681e & 1681i of the FCRA. These provisions apply exclusively to "consumer reporting agencies." As defined by the Act, a "consumer reporting agency" is:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C.A. § 1681a(f).

ITT contends that it is not a consumer reporting agency under the FCRA, *see ITT's Statement of Material Facts as to which No Genuine Dispute Exists,* at ¶¶ 2–3, and has supplied sworn testimony to that effect that "ITT Consumer Financial Corporation is not in the business of, and does not engage in the practice of, assembling or evaluating credit information or other information on consumers for the purpose of furnishing reports to third parties." *Affidavit of Mike Summers, Branch Manager, ITT Consumer Financial Corporation, Clarksville, Indiana,* at ¶ 7. ITT also argues that it has not acted as a consumer reporting agency in its relations with Plaintiffs, and that Plaintiffs have no evidence that it has furnished a "credit report" to any third party.[5]

---

5. Under the FCRA, a "consumer report" is:
any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. The term does not include (A) any re-

port containing information solely as to transactions or experiences between the consumer and the person making the report; (B) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device; or (C) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his decision with respect to such request, if the third party advises the consumer of the name and address of the person to whom the request was made and such person makes the disclosures

In support of its contention that it is entitled to judgment as a matter of law on Count V, ITT brings to the Court's attention a case from the 11th Circuit, *Smith v. First Bank of Atlanta*, 837 F.2d 1575 (11th Cir.1988), *cert. denied*, 488 U.S. 821, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988), where the court upheld an award of summary judgment in favor of a bank which stood accused of violating the FCRA. The court reached this decision after finding that the bank had not acted as a "consumer reporting agency" under the terms of the Act:

> The district court properly granted the Bank's motion for summary judgment.... [W]here the Bank has reported information based solely on its own experience with one of its customers, the Bank is not acting as a "consumer reporting agency," within the meaning of the Fair Credit Reporting Act, because, *inter alia*, it has not furnished a "consumer report" as that term is defined in the Act. A "consumer report" does not include "any report containing information solely as to transactions or experiences between the consumer and the person making the report." 15 U.S.C.A. § 1681a(d), (f). (citations omitted).

*Id.* at 1578.

Plaintiff attempts to dispute ITT's contention that it is not a consumer reporting agency under the Act by showing "that ITT acted as a consumer reporting agency in this instance, [and] that ITT is a user of consumer reports." *Plaintiffs' [sic] Response to Defendants [sic] Motions for Summary Judgment*, at 27. Although § 1681e(a) includes language concerning the duties of *prospective users* of credit information, Counts I–V of the Complaint do not state a claim on these grounds. Rather, they deal exclusively with the Defendants' alleged failure to maintain reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit rec-

ords, and to correct these records once errors were discovered. *See* Complaint, Counts I–V. The Court has no authority to rewrite the Complaint or construe it beyond the plain meaning of its words. In addition, whether ITT acted as a credit reporting agency "in this instance" does not seem especially relevant given that the Act's definition provides that a "consumer reporting agency" is an entity that *"regularly* engages in whole or in part in the practice of assembling or evaluating consumer credit information...." (emphasis added). *See* 15 U.S.C.A. § 1681a(f) (1982). Either way, Plaintiffs' arguments still fail as a matter of law as they have not set forth any facts in support of their claim that ITT was a credit reporting agency— even "in this instance." [6] "To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial." *Posey*, 702 F.2d at 105. Plaintiffs' have not met this burden as they have only presented unsubstantiated allegations that ITT was a consumer reporting agency. Their reliance on *Russell v. Shelter Financial Services*, 604 F.Supp. 201 (W.D.Mo.1984), and *Kennedy v. Border City Savings & Loan Assoc.*, 747 F.2d 367 (6th Cir.1984), is misplaced. These cases involve violations committed by users of consumer reports—not consumer reporting agencies. Because there remains no genuine issue as to ITT's status as a consumer reporting agency under the FCRA, summary judgment is entered in ITT's favor on Counts I–V.

### 2. *The Fair Debt Collection Practices Act*

■ Count VI of the Complaint alleges that ITT violated §§ 1692b, 1692e(4) and 1692e(8) of the FDCPA. Each of these sections is directed solely to the activities

---

to the consumer required under section 1681m of this title.
15 U.S.C.A. § 1681a(d) (1982).

**6.** The arguments contained in the accompanying briefs can not form a basis for the Court's ruling today. "Purported statements of fact in a party's brief or memorandum of law submitted

on a motion for summary judgment are not sufficient to raise an issue of fact and will not be considered by the court in deciding the motion...." Federal Procedure § 62:608 (1988); *see also Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir.1977).

of "debt collectors." [7] ITT has submitted sworn testimony that: (1) its principal business is not the collection of debts; (2) it does not regularly collect or attempt to collect, directly or indirectly, debts owed or due, or asserted to be owed or due another; (3) when collecting its own debts, ITT does not use any name other than ITT Consumer Financial Corporation, ITT Financial, ITT Financial Services, or ITT, and does not indicate that it is collecting any debts other than its own; and (4) the principal business of ITT is not the enforcement of security interests. *See Affidavit of Mike Summers, Branch Manager, ITT Consumer Financial Corporation, Clarksville, Indiana,* at ¶¶ 3, 4, 5, 6.

As with their FCRA claims, Plaintiffs have failed to carry their burden of showing that there is a genuine issue for trial as concerns ITT's liability under the FDCPA. Denials contained in the pleadings or bald allegations that an issue of fact exists is insufficient to raise a factual issue. *See Shacket,* 681 F.2d at 513 n. 8 (7th Cir.1982). Plaintiffs' only response to ITT's sworn testimony is that "[t]he collection of delinquent debts is not that far from being the heart of what ITT does." *Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment,* at 33. Proximity has little to do with the Court's application of § 1692a(6); either ITT is a "debt collector" under the Act or it is not. Because there remains no genuine issue as to ITT's status as a "debt collector" under the FDCPA, summary judgment is entered in ITT's favor on Count VI of the Complaint.

### 3. *The State Law Claims*

■ Plaintiffs have incorporated a variety of state law tort claims in their Complaint, including: (1) interference with economic relations, Count VII (2) defamation, Count VII [sic] (3) negligence, Count X (4) harassment, Count XI, and (5) outrageous conduct, Count XII. Because the last two counts (i.e. Counts XI and XII) are not recognized causes of action in Indiana, they are dismissed. The Court addresses the remaining counts sequentially.

■ Defendant TRW argues that Count VII should be dismissed because "Indiana does not recognize a cause of

7. A "debt collector" is defined in the Act as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
>
> (A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;
>
> (B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;
>
> (C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;
>
> (D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;
>
> (E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditor; and
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.
>
> 15 U.S.C.A. § 1692a(6) (1992).

action for interference with prospective economic advantage." *TRW Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment*, at 10. The Court is surprised that counsel would present such an argument. Indiana does recognize the tort of interference with a prospective advantage in business.[8] Construing Indiana law, the Seventh Circuit has written: "Under the tort of interference with a business relationship or prospective advantage in business.... [t]he plaintiff must prove that a valid business relationship existed, of which the defendant knew, in which the defendant tortiously interfered without justification, and that damage resulted to the plaintiff." *Flintridge*, 761 F.2d at 440; *Economation, Inc. v. Automated Conveyor Systems, Inc.*, 694 F.Supp. 553, 556 (S.D.Ind.1988). Plaintiffs allege that the Defendants interfered with business transactions involving: (1) the sellers of their former home, (2) the sellers of the new home, (3) Inland, (4) Keith Mirocha's former employer, Budget Auto Sales, (5) Phyllis K. Mirocha's former employer, Bales Motor Company, (6) former and prospective employers, and (7) former and prospective business associates and firms. All sides have presented their respective interpretations of the facts surrounding the Defendants' alleged interference, and the Court is satisfied that, with the exception of Plaintiffs' former employers, there remain triable issues of fact that concern the parties' interactions with all of the entities above.

■ Plaintiffs, however, have presented not one scintilla of evidence which tends to show that they were discharged from their jobs because of their credit record. Mr. Mirocha began his employment as a finance and insurance trainee with Budget Auto Sales ("Budget") in June, 1990. He was hired as a temporary employee pursuant to an agreement which provided that: "This agreement is for a period of one (1) day and will automatically renew each day for a period not to exceed 90 days unless cancelled at will by either party at any time." TRW Exhibit O. Mr. Mirocha testified that he could only "speculate" as to the reasons for his dismissal; he could offer no evidence linking his termination from Budget with the issues that are the subject of this case. *See* TRW Deposition Keith (1), at 21–23. Mr. Mirocha's supervisors at Budget, William Smith and Joseph Spain, both testified that the reasons for Budget's decision to terminate Mr. Mirocha's employment had nothing to do with any act or omission on the part of any of the defendants, but instead was due to his insufficient progress in the trainee program. *See* TRW Exhibit Q.

Mrs. Mirocha's allegations against her former employer, Bales, are equally unsubstantiated. She claims that her position required that she have an excellent credit file, *see Complaint*, at ¶ 85, and that due to the "acts and omissions of the Defendants," Bales learned of her credit difficulties, *see* Complaint, at ¶ 86, which led to her termination. *See* Complaint, at ¶ 88. In fact, however, she voluntarily left her employment, and, according to her supervisors, she had been having significant performance problems in her job which led to her being placed on probation—problems which antedated any of the events which form the basis of the present lawsuit. *See Deposition of David Lewis*, at 37–38; *Deposition of Nels Flink*, at 7–9, 17. Her immediate supervisor, David Lewis, submitted sworn testimony that, from his perspective, Mrs. Mirocha's departure had "absolutely nothing" to do with her credit record, *see Deposition of David Lewis*, at 37–38, and that any information received from ITT was unrelated to Bales' decision to place Mrs. Mirocha on probation. *Id.* at 27. Mrs. Mirocha has come forward with no evidence at all which would contradict the Defendants' arguments.

---

**8.** If counsel does not believe that "economic advantage," as stated in the Complaint, equates with "prospective advantage in business", as found in the case law, it should have made that argument to the Court rather that giving the impression that no such cause of action exists.

The sale of a home or the issuance of a mortgage are business transactions subject to the common law rule. *See, e.g., Flintridge Station Assoc. v. American Fletcher Mortgage, Co.*, 761 F.2d 434, 440–42 (7th Cir.1985).

■ Mrs. Mirocha has already presented many of the same factual issues regarding her employment and departure from Bales to the Equal Employment Opportunity Commission (EEOC), which ruled in Bales's favor. In its Determination, the EEOC stated that Bales "considered her to have *voluntarily* terminated her employment" after she failed to contact her supervisors for almost two months after taking a one-week medical leave. (emphasis added). It also noted that Bales had notified her on May 26, 1990, that her employment status would be reviewed at the end of thirty (30) days because of her poor performance on the job. Given the findings of the EEOC, Mrs. Mirocha is collaterally estopped from claiming that Bales "terminated" her because it learned of her credit problems. The findings of the EEOC indicate that Mrs. Mirocha left her employment voluntarily, and that she was not discharged as she claims because of her credit record.

■ In *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 330–34, 91 S.Ct. 1434, 1443–46, 28 L.Ed.2d 788 (1971), the United States Supreme Court upheld the defensive use of collateral estoppel even when the party asserting it was not a party to the prior action. Administrative agency decisions may be given preclusive effect provided: (1) the original action was properly before the agency, (2) the same disputed issues of fact were before the agency as are before the court, (3) the agency acted in a judicial capacity, and (4) the parties had an adequate opportunity to litigate the issues before the agency. *See United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966); *Frye v. United Steelworkers of America,* 767 F.2d 1216, 1220 (7th Cir.1985), *cert. denied,* 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 461 (1985). All of these requirements are satisfied in the instant action. Although the focus of the EEOC inquiry was Mrs. Mirocha's claim of sexual harassment, this issue was framed in the context of her ensuing departure from Bales. As evidenced by the EEOC Determination, *see* TRW Exhibit L, the nature of her departure was addressed in the EEOC's proceedings, with the conclusion that she had not been discharged but had voluntarily left her job. The Complaint presents one theory on this matter and no more: that Mrs. Mirocha was "terminated" from Bales due to her credit record. *See* Complaint, at ¶¶ 86–88. To the contrary, she was not fired at all, and in light of the EEOC Determination, she is now estopped from denying this fact.

■ Two counts remain. Defendants argue that Count VII [sic], Defamation, and Count 10, Negligence, are preempted by § 1681h(e) of the FCRA, which provides:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, *except as to false information furnished with malice or willful intent to injure such consumer.* (emphasis added).

15 U.S.C.A. § 1681h(e) (1982). Plaintiffs have alleged malice and/or willful intent in both counts. *See, e.g., Thornton v. Equifax, Inc.,* 619 F.2d 700, 703 (7th Cir.1980), *cert. denied,* 449 U.S. 835, 101 S.Ct. 108, 66 L.Ed.2d 41 (1980) (noting that "no defamation or like actions are allowed under the [FCRA] unless malice or willful intent is alleged."). There also remain genuine issues of material fact concerning the Defendants' handling of Plaintiffs' credit records, *supra.* Plaintiffs need not produce definitive proof that the Defendants intended to injure them. Where intent is at issue, this would be an insurmountable requirement because it is not possible to delve into the Defendants' inner thoughts to discern why they behaved as they did. *See, e.g., Skycom Corp. v. Telstar Corp.,* 813 F.2d 810, 815 (7th Cir.1987) ("Yet 'intent' does not invite a tour through [the plaintiff's] cranium, with [the plaintiff] as the guide.").

Rather, where intent has not been explicitly expressed, the trier of fact may deduce it from surrounding circumstances.

The record before the Court presents facts sufficient to raise a genuine issue whether the Defendants intended to harm the Plaintiffs. While admittedly there is no "smoking gun," or a memorandum outlining a scheme to injure the Mirochas, other circumstances are present that could lead a jury to find that the Defendants acted with malicious intent. The interactions between the parties at times were far from cordial. Whether the animus generated from these meetings led to dissemination of the inaccurate records is uncertain. The precise answer to this question, though, isn't what occupies the Court's attention today. In passing on the Defendant's motion for summary judgment, it is not the Court's role to decide one way or another whether whether the Defendants' intentionally harmed the Plaintiffs. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Instead, the Court must decide whether there is a factual dispute concerning the Defendants' intent which "may reasonably be resolved in favor of either party." *Id.*, at 249, 106 S.Ct. at 2510. The Court is satisfied that the facts before it meet this standard, and the Defendants' motion for summary judgment on Counts VII [sic] and X consequently must be denied.

4. *ITT's Motion to Strike and Motion to Deem Matters Admitted*

ITT grouses that Plaintiffs' have not complied with Local Rule 56.1, which requires that:

[a]ny party opposing [a motion for summary judgment] shall ... serve and file ... an answer brief that shall include *in its text* or appendix thereto a "Statement of Genuine Issues" setting forth, with appropriate citations to discovery responses, affidavits, deposition, or other admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated. (emphasis added).

L.R. 56.1—Summary Judgment Procedure. Based on Plaintiffs' alleged noncompliance with this rule, ITT asks the Court to deem admitted every factual assertion contained in its brief in support of summary judgment, and to strike each factual assertion in Plaintiff's brief that is not accompanied by proper citations.

Plaintiffs have not disregarded L.R. 56.1 to an extent which would warrant granting ITT's motions. In what appears to be an attempt to comply with the Rule, a caption in the brief reads "Statement of Genuine Issues," and there are citations throughout the document directing the reader to depositions and other relevant discovery material. The Rule does allow for incorporation of the "Statement" into the text of the brief. The purpose behind L.R. 56.1 is an important one: to notify the parties of the factual support for their respective arguments regarding summary judgment. The Court takes this requirement very seriously, and has noted the deficiencies of which ITT complains. These shortcomings though, are not severe enough to deny Plaintiffs' their day in court.

### CONCLUSION

For the reasons set forth above, summary judgment is GRANTED in ITT's favor on Counts I–VI of the Complaint, and in favor of all Defendants on Counts XI and XII, and on Count VII to the extent that it alleges interference with Plaintiffs' former employment. ITT's motions to strike and to "deem matters admitted" are denied.

It is so ORDERED.